COPY

FILED

1  Michael L. Rodenbaugh
   California Bar No. 179059
2  Erin Dennis Vivion
   California Bar No. 262599
3  *RODENBAUGH LAW*
   548 Market Street
4  San Francisco, CA  94104
   (415) 738-8087 phone/fax
5  info@rodenbaugh.com
6
7  Attorneys for Plaintiff
   PLANET.ECO LLC
8

9                    UNITED STATES DISTRICT COURT
10
                  FOR THE CENTRAL DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| 12 | Case No. CV12-1812-PA (PLAx) |
| PLANET.ECO, LLC, a Connecticut limited liability company, | **FIRST AMENDED COMPLAINT FOR:** |
| 13 | |
| 14          Plaintiff, | **(1) FEDERAL TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114;** |
| 15       v. | **(2) FALSE DESIGNATION OF ORIGIN AND FALSE ADVERTISING, 15 U.S.C., § 1125;** |
| 16 BIG ROOM, INC., a Canadian corporation, DOTECO LLC, a California limited liability company, TOP LEVEL DOMAIN HOLDINGS LIMITED, a British Virgin Island company, and MINDS AND MACHINES LLC, a California limited liability company, and FREDERICK ROBERT KRUGER, individually, | **(3) COUNTERFEITING, 15 U.S.C. § 1114;** |
| 17 | |
| 18 | **(4) VIOLATION OF THE ANTI-CYBERSQUATTING CONSUMER PROTECTION ACT, 15 U.S.C. § 1125(D);** |
| 19 | |
| 20          Defendants. | **(5) UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200;** |
| 21 | |
| 22 | **(6) VIOLATION OF STATE AND FEDERAL COMMON LAW;** |
| 23 | **(7) CONTRIBUTORY TRADEMARK INFRINGEMENT; and** |
| 24 | |
| 25 | **(8) ACCOUNTING COMMON LAW** |
| 26 | |
| 27 | **DEMAND FOR JURY TRIAL** |

1

2    Plaintiff PLANET.ECO, LLC alleges as follows, upon actual knowledge with respect to

3  itself and its own acts, and on information and belief as to all other matters.

4                              **JURISDICTION AND VENUE**

5    1.    This action arises under the Lanham Trademark Act 15 U.S.C. §§ 1051 *et seq.*

6  (the "Lanham Act").  Accordingly, this Court has federal question jurisdiction over the subject

7  matter of this action pursuant to 15 U.S.C. §§ 1121 and 1125(a), and 28 U.S.C. §§ 1338(a), (b).

8  The Court has supplemental jurisdiction over the claims in this Complaint that arise under

9  statutory and common law of the State of California pursuant to 28 U.S.C. § 1367(a) because the

10  state law claims are so related to the federal claims that they form part of the same controversy

11  and derive from a common nucleus of operative facts.  This Court has personal jurisdiction over

12  Defendants because they have continuous, substantial and otherwise sufficient contacts with the

13  State of California and this judicial District subjecting them to personal jurisdiction of this Court

14  pursuant to Cal. Code. Civ. Pro. § 410.10, and because Defendants have purposefully availed

15  themselves of this forum.

16    2.    Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial

17  part of the events giving rise to the claims occurred in this District, and Defendants transact

18  business in this District, including having initiated and/or filed applications with the Internet

19  Corporation for Assigned Names and Numbers ("ICANN")--which is incorporated and existing

20  under the laws of the State of California, with its principal office and place of business located in

21  Marina del Rey, California--to operate a new TLD for ".eco" with the intent of using Plaintiff's

22  trademark to offer the registry services being applied-for and closely related services.

23                                      **PARTIES**

24    3.    Plaintiff, Planet.Eco LLC, is an active Connecticut limited liability company,

25  organized and existing under the laws of the State of Connecticut, with an office located at 45

26  West North St., Stamford, CT 06902.

27    4.    Defendant Big Room, Inc. ("Big Room") is a Canadian corporation with

28

1  addresses at 332-238 Keefer Street, Vancouver, B.C.  V6A 1X6 and 210 Prospect St., New

2  Haven, Connecticut.  Big Room also advertises that it has a mailing address at 195 Prospect St.,

3  New Haven, CT 06511.

4      5.     Defendant DotEco LLC is a California limited liability company with an address

5  at 3100 Donald Douglas Loop N, Hanger 7, Santa Monica, CA 90405.  At all times material to

6  this action, DotEco LLC was the agent, servant, and alter ego of Frederick Robert Krueger

7  ("Krueger"), TLDH and/or Minds + Machines, and the acts of DotEco LLC were in the scope of

8  such relationships; in doing the acts and failing to act as alleged in the Complaint, DotEco LLC

9  acted with the knowledge and at the personal direction of Defendants TLDH, Minds + Machines,

10  and/or Krueger, and DotEco LLC aided and abetted TLDH, Minds + Machines, and Krueger in

11  the acts or omissions alleged herein.  Furthermore, DotEco LLC was and is organized and

12  operating as the alter ego of said Defendants for their personal benefit and advantage, in that said

13  Defendants have at all times mentioned in the Amended Complaint exercised total dominion and

14  control over DotEco LLC.  Said Defendants have so intermingled personal and financial affairs

15  that DotEco LLC was, and is, their alter ego.  In order to prevent deception of the public and

16  unfair competition, the shell of DotEco LLC should be disregarded.

17      6.     Top Level Domain Holdings Limited ("TLDH") is a British Virgin Island

18  ("BVI") company incorporated under the BVI Business Corporations Act 2004 with registered

19  number 1412814. TLDH's shares are publicly traded on the London Stock Exchange's AIM

20  Market with the stock ticker of TLDH.  TLDH has a Registered Office located at Craigmuir

21  Chambers, Road Town, Tortola, BVI VG 1110. Defendant Krueger was the Executive Chairman

22  of TLDH and is now its Chief Strategy Officer and Deputy Chairman.   At all times material to

23  this Complaint, Defendants Krueger, DotEco LLC, and/or Minds and Machines LLC ("Minds +

24  Machines") were TLDH's agents in the State of California.  At all times material to this action,

25  TLDH was the agent, servant, and alter ego of Krueger, and the acts of TLDH were in the scope

26  of such relationship; in doing the acts and failing to act as alleged in the Complaint, TLDH acted

27  with the knowledge and at the personal direction of Krueger, and aided and abetted him, Minds +

28

RODENBAUGH LAW
548 Market Street
San Francisco, CA 94104

-3-

PLANET.ECO LLC'S COMPLAINT
Case No. CV12-1812-PA (PLAx)

1   Machines, and DotEco LLC in the acts or omissions alleged herein.  Furthermore, TLDH was,

2   and is organized and operating as the alter ego of Krueger for his personal benefit and advantage,

3   in that Krueger has at all times mentioned in the Amended Complaint exercised total dominion

4   and control over TLDH.  TLDH and Krueger have so intermingled personal and financial affairs

5   that TLDH was, and is, his alter ego.  TLDH also owns directly 25% of DotEco LLC.  In order to

6   prevent deceiving the public into mistakenly believing that DotEco LLC is a bona fide customer

7   of TLDH and/or its subsidiary Minds + Machines, and unfair competition with Plaintiff, the shell

8   of TLDH should be disregarded.

9          7.     Minds + Machines is an active California Limited Liability Company with an

10   address located at 3100 Donald Douglas Loop N Hanger 7, Santa Monica, CA 90405.  Its

11   "Principal" recorded with the Secretary of State is TLDH.  Minds + Machines is a wholly owned

12   subsidiary of TLDH. Minds + Machines is only a means through which TLDH acts, or nothing

13   more than an incorporated department of TLDH.  TLDH also deliberately directed Minds +

14   Machines' activities in, or having a substantial connection with, the State of California.  Minds +

15   Machines is subject to general personal jurisdiction in the State of California because it is

16   domiciled in the State of California.  At all times material to this action, Minds + Machines was

17   the agent, servant, and alter ego of TLDH and/or Krueger, and the acts of Minds + Machines

18   were in the scope of such relationships; in doing the acts and failing to act as alleged in the

19   Complaint, Minds + Machines acted with the knowledge and at the personal direction of Krueger

20   and/or TLDH, and aided and abetted them, and DotEco LLC in the acts or omissions alleged

21   herein.  Furthermore, Minds + Machines was, and is, organized and operating as the alter ego of

22   Krueger and/or TLDH for their personal benefit and advantage, in that Krueger and/or TLDH

23   has at all times mentioned in the Amended Complaint exercised total dominion and control over

24   Minds + Machines.  Minds + Machines, TLDH and/or Krueger have so intermingled personal

25   and financial affairs that Minds + Machines was, and is, their alter egos.  In order to prevent

26   deceiving the public into mistakenly believing that DotEco LLC is a bona fide customer of

27   Minds + Machine and/or its parent company, and unfair competition with Plaintiff, the shell of

28

1    Minds + Machines should be disregarded.

2         8.      Defendant Krueger is an individual residing in Malibu, CA.  At all times material

3    to this action, Defendant Krueger personally directed TLDH, Minds + Machines, and DotEco

4    LLC in the acts or omissions alleged in this Complaint, with their full knowledge that their

5    resources were being used for the acts of infringement complained of herein.

6         9.      The degree of control exercised by Defendant Krueger over Minds + Machine,

7    TLDH, and DotEco LLC is pervasive and continual.  The degree of control also exercised by

8    TLDH over Minds + Machine is pervasive and continual.

9                            **FACTUAL BACKGROUND**

10                          PLAINTIFF'S ACTIVITIES

11        10.     Plaintiff's President, Moses W. Boone, first started developing the concept for

12   services to be rendered under the mark .ECO in 2005, during the same time period when he

13   started using "Colored Planet" as a trade name.

14        11.     Mr. Boone coined the mark .ECO for assisting organizations in the environmental

15   space with design, creation, hosting and maintenance of Internet sites, hosting of their digital

16   content over the Internet, and providing customers specific information as requested via the

17   Internet prior to knowing there was a possibility of an expansion of the top-level domain name

18   (TLDs) space, including the possibility of the string ".eco" as a TLD.

19        12.     Only after filing an intent-to-use trademark application for the mark .ECO did Mr.

20   Boone even hear of such rumors of a mass expansion of the TLD space to allow unlimited public

21   applications for new TLDs.  The mark was not coined for use as a TLD, but as a mark for

22   assisting organizations in the environmental space with design, creation, hosting and

23   maintenance of Internet sites, hosting of their digital content over the Internet, and providing

24   customers specific information as requested via the Internet.

25        13.     Mr. Boone coined the mark .ECO when he had the idea of creating

26   environmentally inspired websites that bring about change through healthy, virtual collaboration

27   and engagement that cultivates a clean, positive and sustainable future.

28

14.     Mr. Boone approached a colleague, Trevin Griffin, and agreed that if Trevin Griffin incorporated Colored Planet, the trade name under which Mr. Boone had been doing business, Mr. Griffin would become a co-owner of the company, and Mr. Boone would file a trademark application in both of their names as co-owners of the company doing business as Colored Planet.

15.     Mr. Boone was under the impression that Trevin Griffin had already incorporated Colored Planet when he filed the application for the mark .ECO, and was under that impression throughout the pendency of the application through issuance of the certificate of registration. Therefore, the application identified them as co-owners doing business as "Colored Planet."

16.     Because Mr. Griffin had not actually incorporated Colored Planet as he had agreed would be accomplished prior to when Mr. Boone filed the application, Mr. Griffin was not a co-owner and the only owner of the application was Mr. Boone himself.

17.     Mr. Griffin had no interest in the trademark application for .ECO because he never joined Mr. Boone's business operations.  Mr. Boone was the sole owner of the application for .ECO, did business as Colored Planet, and the only reason Mr. Boone identified Colored Planet Connextion as doing business as "Colored Planet" in the application, instead of Mr. Boone individually, is because Mr. Boone thought Mr. Griffin had already incorporated such entity, as he had agreed to do.

18.     Doing business as Colored Planet, since at least 2008, Mr. Boone used the mark .ECO in Connecticut to render website consulting services for "not for profits."  Since at least 2009, he used the mark .ECO in interstate commerce, offering website building services to teach and guide such like-minded individuals how to build a website, including discovering the optimal niche, finding correct keywords, coding HTML webpages, using graphics, search engine optimization of site content, web design, domain names, web hosting, and online website builders.

19.     Mr. Boone, as "Colored Planet," assisted numerous organizations in the environmental space with design, creation, hosting and maintenance of Internet sites, hosting of

1  their digital content over the Internet, and providing customers specific information as requested

2  via the Internet.  For example, he assisted Allan Brison, former Green Party Alderman, New

3  Haven, CT with website creation for an online presence for the Green Party.  He also assisted

4  Frank and Paula Panzarella, a non-profit known as "Fight the Hike," who were advocates for

5  renewable energy and reduction of dependence upon electricity, with website creation.  He also

6  assisted the Center for a Sustainable Future / Gateway Community College, Dean David N.

7  Cooper, New Haven Green Drinks, Mahikari Light.org, and Gateway Grant Proposal Writers

8  Group with their website creation.

9       20.    On or about the time he commenced use of the mark .ECO, using the trade name

10  Colored Planet, Mr. Boone publicly announced its mission to "be the change" that "we have to

11  see in the world" by aligning itself with those who understand the importance of protecting the

12  planet's biosphere.  "Colored Planet" further explained its vision for the mark .ECO as being one

13  of the catalysts for the rapid reversal of negative buildup of GHG in the air and a myriad of

14  toxins in our waters, and for the fostering of food sources which are humanely and

15  biodynamically managed.

16       21.    Colored Planet announced that it looked forward to voluntarily investing a

17  percentage of its profits in projects that encompass clean air and water; work for the elimination

18  of hunger; and work for the development of renewable non-polluting energy sources.

19       22.    Since 2008, Colored Planet declared its hope that its collective efforts would

20  result in healthier homes, cleaner and safer workplaces, and a world where true health, harmony

21  and prosperity is the norm, rather than the exception.  Colored Planet was Mr. Boone, and the

22  trade name under which he did business was always under Mr. Boone's complete control.

23       23.    "Colored Planet" offered services under the .ECO mark in the nature of website

24  promotion and affiliate programs for selling over the Internet in 2008, so that customers can

25  create income from such sites.  Amongst other things, Colored Planet also offered services under

26  the mark .ECO related to domain name registrations.  Specifically, Colored Planet explained the

27  importance of selecting the right domain name and finding the appropriate registrar to work with.

28

RODENBAUGH LAW                                     PLANET.ECO LLC'S COMPLAINT
548 Market Street                        -7-                  Case No. CV12-1812-PA (PLAx)
San Francisco, CA 94104

1   On its brochure, using the .ECO mark to indicate that the services originate with Colored Planet,

2   Mr. Boone invited customers to contact him to consult on these decisions.

3      24. Sometime after filing the trademark application for .ECO, Mr. Boone learned

4   about the possibility of new Top Level Domains.  Mr. Boone had not heard of that possibility

5   when he coined the mark .ECO and commenced use of that mark.

6      25. Until Mr. Boone assigned the mark to the Plaintiff, he alone did business under

7   the trade name "Colored Planet" and had always exercised complete control over the mark .ECO.

8      26. Although the application for the trademark .ECO was filed by Colored Planet

9   mistakenly in the name of a non-existent corporation doing business as Colored Planet, Colored

10  Planet (Mr. Boone) as the owner of the mark, filed the application, and has continuously

11  exercised complete quality control over the services rendered under the .ECO mark, so that the

12  mark .ECO has always indicated a single source of origin, namely Mr. Boone, as "Colored

13  Planet."

14     27. In sum, Mr. Boone, who had coined the mark, filed the PTO application and was

15  the rightful owner of the application, commenced use of the mark .ECO doing business as

16  "Colored Planet," and exercised complete quality control over such use of the mark .ECO

17  continuously during the pendency of the application -- through issuance of the certificate of

18  registration and thereafter until he assigned business assets, including all rights in the mark and

19  associated goodwill to Plaintiff.

20     28. On January 27, 2012, Mr. Boone completed the cover sheet for recording an

21  assignment of a trademark with the Assignment Division of the United States Patent and

22  Trademark Office.  On February 7, 2012, he executed the underlying assignment document to be

23  recorded with the United States Patent and Trademark Office, and faxed the cover sheet together

24  with the Assignment document to the Assignment Division.  The Assignment Division recorded

25  the Assignment as of the date the cover sheet was executed on January 27 under Reel 4715,

26  Frame 0630.

27     29. Because it was taking longer than Mr. Boone anticipated to receive

28

RODENBAUGH LAW                PLANET.ECO LLC'S COMPLAINT
548 Market Street             -8-        Case No. CV12-1812-PA (PLAx)
San Francisco, CA 94104

1   acknowledgement that the Assignment has been recorded, he called the Assignment Division to

2   see whether a clerical error on the cover sheet was holding up the recordal process.  Specifically,

3   on the cover sheet, under the Receiving Party data, the entity type field was filled in with

4   "Limited Liability Company: United States" (although the State of the limited liability company

5   was correctly identified as "Connecticut" in a different line asking for the identity of the State

6   within the box for the Receiving Party data).

7        30.   The person on the phone at the Assignment Division did not want Plaintiff to have

8   to incur an additional cost for making an immaterial change to the cover sheet to record the exact

9   same document, so Plaintiff was told to re-submit the same cover sheet with the correction of the

10  entity type field to indicate "Limited Liability Company: Connecticut" instead of "Limited

11  Liability Company: USA".  The Assignment Division recorded the same cover sheet with the

12  clerical error corrected to "Limited Liability Company: Connecticut" on Reel 4716, Frame 0715.

13  Mr. Boone re-submitted the cover sheet with the clerical error corrected as instructed, and the

14  same Assignment Document was recorded again with this correction on a new reel and frame

15  without charging Mr. Boone for making this insignificant change to the cover sheet.

16       31.   The Assignment Division recorded the cover sheet with the field of "Entity Type"

17  changed from "Limited Liability Company: USA" to "Limited Liability Company: Connecticut"

18  against the exact same Assignment document on Reel 4715, Frame 0630.

19                    **PLAINTIFF'S REGISTERED MARK**

20       32.   Plaintiff is the exclusive owner of U.S. Reg. No. 2,716,170 for the mark .ECO® in

21  standard characters, covering "design, creation, hosting and maintenance of Internet sites for

22  third parties; hosting of digital content on the Internet; providing specific information as

23  requested by customers via the Internet," in Class 42 (the "'170 Registration").

24       33.   The '170 Registration issued November 24, 2009, and is valid, subsisting, and in

25  full force and effect.  True and correct copies of the '170 Registration, together with the

26  Trademark Assignment Abstract of Title, is attached as Exhibits A and B, respectively.

27       34.   The mark-as-applied-for in the '170 Registration has continuously been used by

28  

RODENBAUGH LAW                                    PLANET.ECO LLC'S COMPLAINT
548 Market Street                                 Case No. CV12-1812-PA (PLAx)
San Francisco, CA 94104              -9-

1 the owner of the application, Mr. Boone, first doing business as Colored Planet, and thereafter by

2 Mr. Boone as President of the Applicant to which the '170 Registration had been assigned.

3      35.     The existence of this valid and subsisting federal trademark registration is *prima*

4 *facie* evidence of Plaintiff's ownership and the validity of the mark .ECO®.  The mark is unique

5 and distinctive and, as such, designates a single source of origin.

6      36.     Plaintiff has constructive nationwide priority for its mark .ECO® since April 20,

7 2008 (the "Priority Filing Date"), when the assignor filed application SN 77-452,991 (the

8 "Application") in the United States Patent and Trademark Office ("PTO"), which resulted in

9 issuance of the '170 Registration on the Principal Register to Plaintiff's predecessor-in-interest,

10 now assigned to Plaintiff.

11      37.     Plaintiff continues to offer a wide variety of services online in the United States

12 under its mark .ECO®, including domain name registration services, web hosting services, SSL

13 & security services, email account services, marketing tools, and website building services.  A

14 detailed list of the services for each of these categories can be found on Plaintiff's most current

15 dedicated site, <www.dot-eco.com>.

16      38.     Not only is Plaintiff's mark inherently distinctive (further evidenced by the '170

17 Registration), but it has also gained extrinsic strength through successful policing efforts by

18 Plaintiff's President.  For example, Mr. Boone has monitored infringing uses of the registered

19 mark on popular social networking sites, such as Facebook.  Recognizing that a federal

20 registration is entitled to a presumption of validity, Facebook has thanked Plaintiff for bringing

21 infringing uses to its attention, and has removed or disabled access to offending third-party

22 content reported by Plaintiff.

23      39.     Plaintiff's mark .ECO® is a valid and enforceable mark.

24      40.     Notwithstanding successful policing efforts by Plaintiff's President, Plaintiff has

25 not been able to stop all such use and now therefore, seeks relief from the Court.

26     <u>DEFENDANTS SEEK TO OPERATE THE ".ECO" TLD UNDER THE MARK .ECO</u>

27      41.     ICANN is a non-profit corporation that was organized in 1998 in response to a

28

1    plan by the Department of Commerce.

2         42.    The Internet is comprised of numerous TLDs.

3         43.    Each TLD has a "registry" or operator, responsible for keeping the records and a

4    directory of all the domain names registered within that TLD, and ensuring that appropriate

5    information is provided in response to Internet users' specific requests via the Domain Name

6    System (DNS).

7         44.    One of ICANN's functions is to enter into registry agreements that authorize an

8    entity to act as the registry for a particular TLD.

9         45.    In June 2011, ICANN's Board of Directors authorized the launch of a new TLD

10   program.  The TLD Application System ("TAS") is ICANN's official application submission

11   and management system for the new TLD program.  Applicants are able to register for access

12   through the 29th of March, with final submission by April 12, 2012.[1]

13        46.    Domain name registry services are identical and/or highly related to the services

14   expressly covered by Plaintiff's '170 Registration.

15        47.    The Defendants have already infringed on Plaintiff's registered mark in the

16   United States, and have demonstrated intent to use infringing domain names, an infringing mark

17   and/or name in connection with operating the ".eco" TLD.  Therefore, they should be

18   permanently enjoined from further infringing Plaintiff's mark, including without limitation by

19   operating the ".eco" TLD in the United States, and preliminarily enjoined from doing so if it

20   appears at any time that delegation by ICANN to any of them is imminent.  Registry services are

21   identical and highly related to the services covered by Plaintiff's registered mark in the United

22   States, and Defendants' conduct to date is evidence that if they continue to seek to operate the

23   ".eco" TLD, and any of them were to be delegated the ".eco" TLD to operate as a registry, they

24   would do so in a manner that inevitably infringes on Plaintiff's rights. They already have

25   infringed, and continue to do so, notwithstanding Plaintiff's protest.

26

27   _____
     [1] As of the date of this filing, the application period has been extended to April 20th.

28   **RODENBAUGH LAW**                                    **PLANET.ECO LLC'S COMPLAINT**
     548 Market Street                                    Case No. CV12-1812-PA (PLAx)
     San Francisco, CA 94104          -11-

**DEFENDANTS' INTENTIONALLY WRONGFUL ACTIVITIES**

BIG ROOM'S INTENTIONAL INFRINGEMENT

48.     Big Room has provided, and continues to provide in the United States access to information regarding environmental, social and governance characteristics and/or performance, domain names, and information services relating to environmental, social and governance characteristics and/or performance, as well as policy development services related to domain name registration and maintenance ("Current Services").

49.     Big Room also intends to offer Internet registry services for the ".eco" TLD, using the same string of characters as a trademark to identify Big Room as the source of such services in the United States, by contracting with ICANN in this District.  Indeed Big Room has already executed a contract with ICANN, in order to submit its new TLD application, along with an $185,000 fee.

50.     For its Current Services that have been, and continue to be rendered in the U.S., Big Room contracted with companies in California to provide its Current Services through social media outlets, and uses these social media outlets to solicit partners.

51.     Big Room has also contracted with certain organizations to represent its interests and solicit partners, which it refers to as its "Community Council."  For example, The Meridian Institute, with staff in California, is a member of its Community Council.

52.     Big Room also has a customer in California that has subscribed to its electronic database of "ecolabels" maintained by Big Room.

53.     As stated, Big Room has already entered in a contract with ICANN in this District to operate the ".eco" TLD under the offending mark that is complained of herein.  Before an applicant can even create an application online with ICANN, the potential applicant must sign a lengthy agreement with ICANN, in which the potential applicant agrees to abide by certain terms and conditions set by ICANN. Big Room entered into the contract with ICANN, located in this District, to operate the ".eco" TLD in an infringing manner, using Plaintiff's registered mark in

the United States.  Big Room acknowledged by checking various boxes that it understood and agrees that the terms and conditions are binding on Big Room, and a material part of its application to operate the ".eco" TLD.

54.     Much of the Actual Services rendered by Big Room that are infringing relate to its intent to operate the ".eco" TLD, and so Plaintiff is closely related to the contractual relationship involved between ICANN and Big Room.

55.     Furthermore, Twitter is a privately-owned corporation with its principal office or place of business in San Francisco, California.  Big Room entered into a contract with Twitter in California to render its Current Services throughout the United States and elsewhere throughout the world.  Defendant Big Room promoted, and continues to prominently promote its Actual Services through Twitter, one of the same trade channels and to the same customer base as Plaintiff in direct competition therewith.

56.     Big Room's website invites visitors to join a Twitter conversation that it streams "live" on its website.  Thus, Big Room's website is interactive by inviting visitors to "join" a Twitter "conversation" that is streamed "live," in which it uses the mark .ECO to render its Current Services to Internet users in the United States, including in this District.  Big Room has tweeted close to 2,000 "Tweets" using Twitter, rallying users to become "followers," and has over 2,400 followers as a result of such interactivity.  Of its "Followers" rallied through Twitter, many reside in California, as do a significant number of the more than 1,600 profiles that Big Room has chosen to "Follow" in order to engage them to render its Current Services using the .ECO mark.  Big Room's principals also prominently interact on Twitter, and have even more Followers residing in California.  Given the nature of its Actual Services, Big Room is undoubtedly cognizant that it is targeting California through its interactive use of Twitter, as it is undoubtedly cognizant of the computer technology market's concentration in California's "Silicon Valley," including the companies and individuals with whom it has engaged on its website via Twitter.

57.     Under the Twitter contract, Big Room accepted that the terms and any action

1   related thereto will be governed by the laws of the State of California without regard to Big

2   Room's country of residence, and that all claims, legal proceedings or litigation arising in

3   connection with the Twitter services will be brought solely in San Francisco County, California,

4   and consented to the jurisdiction of and venue in such courts

5          58.    Many of the infringing Actual Services rendered by Big Room occur through

6   Twitter, and so Plaintiff is closely related to the contractual relationship involved between

7   Twitter and Big Room.

8          59.    Big Room also created and uses for advertising purposes a Facebook Page called

9   "DotEcoDomain" to render its Actual Services displaying the .ECO mark in connection

10  therewith, attract new partners, and engage visitors to "Like" its Page to render Actual Services

11  to them.  Big Room advertises this interactive Page on its website, and Plaintiff is informed and

12  believes, and upon that basis alleges that Big Room has purposefully targeted Pages of California

13  residents by "Liking" their Pages, and by trying to create "buzz" to advertise its Actual Services

14  to them in this District.  The Facebook Page of Big Room is interactive also insofar as visitors

15  can use it to post comments and questions on a message board and can sign up to be fans. Big

16  Room has used, and continues to use, the Page to respond to questions, send message to their

17  fans' Facebook accounts, and solicit partners.

18         60.    Big Room also contracted with Facebook to resolve any claim with Facebook

19  arising out of or relating to Facebook exclusively in a state or federal court located in Santa Clara

20  Country and to submit to the personal jurisdiction of the courts located in Santa Clara County,

21  California for the purpose of litigation all such claims.

22         61.    Much of the Actual Services rendered by Big Room that are infringing occur

23  through Facebook, and so Plaintiff is closely related to the contractual relationship involved

24  between Facebook and Big Room.

25         62.    Therefore, there is undoubtedly personal jurisdiction in this District over Big

26  Room.  And to the extent Big Room disputes any of these allegations, Plaintiff is entitled to

27  jurisdictional discovery.

28  **RODENBAUGH LAW**                                    **PLANET.ECO LLC'S COMPLAINT**
    548 Market Street                          -14-        Case No. CV12-1812-PA (PLAx)
    San Francisco, CA 94104

63.     Big Room filed to register the .ECO mark before the PTO for substantially the same services as covered by Plaintiff's .ECO® registration.  A true and correct copy of Big Room's application with its original description of its services that it intends to use in the United States is attached hereto as Exhibit C, and a true and correct copy of the amended description of services as proffered by Big Room to the PTO, and as entered by the PTO as part of the "file wrapper," is attached hereto as Exhibit D.

64.     The services in Big Room's application are substantially identical or highly related to the services covered by Plaintiff's registration.

65.     As early as October 28, 2008, the PTO notified Big Room *that Plaintiff has priority over Big Room* and that there would be a likelihood of confusion between Big Room's application to register DOT ECO and Plaintiff's pending mark.  A true and correct copy of the PTO's notification is attached hereto as Exhibit E.

66.     At that time, there was no display of Plaintiff's .ECO trademark on Big Room's website located at http://www.bigroom.ca.

67.     Notwithstanding Plaintiff's Priority Filing Date—and Big Room's *actual knowledge* of Plaintiff and its mark—on or about April 2009, in reckless disregard of Plaintiff's rights, in April 2009, Big Room registered the domain name *doteco.info*, which is currently used to render its Current Services nationwide and elsewhere throughout the world.

68.     In fact, on or about June 2009, Big Room announced that Big Room is building a system that will use the .eco TLD to provide online information at the specific request of Internet users – "to anyone with a browser, anytime they need it, anywhere on the planet." Big Room advertised that "doteco.info" will be used as its "hub" for the operation of identical and highly related services as covered by Plaintiff's registered mark. Big Room used Plaintiff's mark and substantially indistinguishable variations thereof, on pages hosted at the domain name *doteco.info* for identical and highly related Internet services.

69.     Furthermore, notwithstanding actual knowledge of Plaintiff, long after Plaintiff's Priority Filing Date and after Big Room knew that Plaintiff had commenced use of its .ECO

mark in interstate commerce for identical and highly related internet services, Big Room

registered the domain name doteco.org (collectively, the *doteco.info* and *doteco.org* domains,

hereinafter referred to as "Big Room Domain Names") on or about March 18, 2009.

70.     Previously thereto, the doteco.org domain was registered to Mr. Trevor Bowden,

one of the co-founders of Big Room.

71.     Big Room commenced use of the Big Room Domain Names by advertising them

and using them in connection with rendering the Current Services, substantially identical

services as covered by Plaintiff's .ECO® registration, such as providing specific information at

the request of its subscribers through a variety of means in the United States and elsewhere,

using a mark identical to Plaintiff's registered mark.

72.     Plaintiff demanded that Big Room cease its infringing activities, and after some

negotiation with Plaintiff in Connecticut, Big Room offered Plaintiff $15,000 to license its rights.

Plaintiff refused, and even after protest, Big Room continued to ramp up its campaign to apply to

ICANN to operate registry services for the ".eco" TLD under identical or substantially

indistinguishable marks as Plaintiff's registered mark, and continued to render the Current

Services in the United States under a replica mark.  For example, on the landing page for

doteco.org domain, Big Room continues to render its Actual Services under a mark substantially

indistinguishable from Plaintiff's registered trademark.

73.     Through counsel, on or about January 12, 2012 when the application window

actually opened, Plaintiff sent a second "cease and desist" notice to Big Room, again notifying

Big Room that Plaintiff has established an ongoing business in the United States since 2008,

using the .ECO® mark and that the '170 registration describes domain name registration

activities.

74.     Plaintiff expressed through counsel that Big Room immediately cease and desist

from any new activities in furtherance of its stated intent to apply to ICANN to operate a .ECO

TLD in an infringing manner.  A true and correct copy of the demand letter dated January 11,

2012 to Big Room is attached as Exhibit F.  Although Plaintiff's counsel offered Big Room an

1   opportunity to call with any questions, Big Room neither availed itself of this opportunity, nor

2   raised any substantive arguments in response.

3       75.    Notwithstanding that Big Room was seeking to register a .ECO trademark with

4   the USPTO for substantially identical services as covered by Plaintiff's registration, Big Room

5   filed a petition to cancel Plaintiff's '170 registration on February 17, 2012, on the alternative

6   ground that the very mark it seeks to register is actually incapable of functioning as a trademark

7   to begin with.

8       76.    On top of that, Big Room asserted in its February 2012, petition to the USPTO

9   that Plaintiff procured its registration fraudulently, even though the public record before the

10  TTAB makes clear that Plaintiff has been using its mark in commerce since 2008 for the services

11  covered by the '170 registration.

12      77.    Furthermore, on or about June 7, 2010, Big Room had told the PTO that it should

13  suspend its pending .ECO application on the grounds that *Defendant DotEco LLC* (discussed

14  below) had filed a petition to cancel Plaintiff's mark (which petition since has been dismissed by

15  the PTO at Plaintiff's behest).  Therefore, it is apparent that Big Room was fully familiar with

16  the proceedings before the United States Trademark Trial and Appeal Board ("TTAB") by and

17  between Plaintiff and DotEco LLC, including publicly available, notarized affidavits submitted

18  by Plaintiff as evidence of its use of its .ECO® mark since 2008.

19      78.    Big Room surely was aware of the evidence of use made of record in the DotEco

20  LLC proceeding and/or recklessly disregarded such public records in bringing its petition to

21  cancel on February 17, 2012.

22      79.    Plaintiff received actual notice of Big Room's filing on February 22, 2012.

23      80.    Unless and until the Court declares Plaintiff's trademark valid, and enjoins Big

24  Room from offering its Actual Services in the United States in a manner that infringes on

25  Plaintiff's rights, Plaintiff has suffered, and will continue to suffer irreparable harm.

26      81.    Big Room's contract in this District with ICANN to operate a new TLD using an

27  identical mark as Plaintiff's registered mark would infringe Plaintiff's clear and valid trademark

28

1    rights.  The rendering of its Actual Services in the United States is a willful act of infringement.

2    Big Room's claim that the mark is generic, even though it has repeatedly tried to secure

3    trademark rights in the same mark via both registration and license, is inequitable and bad faith

4    conduct that must be enjoined so as to prevent further irreparable harm to Plaintiff, its mark, and

5    its business.

6         82.    Big Room's domain *doteco.info* has been used to re-direct traffic to the

7    *doteco.org* domain name, where Big Room has rendered, and continues to render, its Actual

8    Services under Plaintiff's mark, and a "CALL TO ACTION" for support to operate the ".eco"

9    TLD using a .ECO mark in the United States. A replica or substantially indistinguishable mark

10   as Plaintiff's registered mark has been intentionally hosted on this page as well.

11        83.    Defendant Big Room has no legal basis for seeking to interfere with Plaintiff's

12   rights in the United States, or willfully using a counterfeit mark in the United States in a manner

13   that inevitably will cause confusion, thereby harming both the general public and Plaintiff's

14   business.

15        84.    Plaintiff has suffered, and will continue to suffer further, irreparable injuryas a

16   result of Big Room's activities in the United States.

17        85.    Plaintiff has no adequate remedy at law.

18
19   <u>**DOTECO LLC'S WILLFUL INFRINGEMENT**</u>

20        86.    DotEco LLC intends to operate a new TLD ".eco" domain name registry in a

21   manner that infringes on Plaintiff's trademark rights in the United States.

22        87.    After Defendant TLDH was incorporated on June 22, 2007, and after Plaintiff's

23   Priority Filing Date, DotEco LLC was organized by Defendant Krueger in California to operate

24   and promote ".eco" as a new TLD, services identical and/or highly related to the services

25   covered by the '170 registration, using an infringing name and mark.  Just one month before co-

26   founding DotEco LLC, Defendant TLDH, of which Defendant Krueger is an Executive Director

27   and was a co-founder, issued a press release in March 2008 that it intended to maintain the

28   RODENBAUGH LAW                                       PLANET.ECO LLC'S COMPLAINT
548 Market Street                                       Case No. CV12-1812-PA (PLAx)
San Francisco, CA 94104          -18-

1  domain registration of those domain names that the Directors consider are capable of generating

2  ongoing direct navigation and search traffic and click-through revenues in excess of annual

3  registration costs.  Defendant TLDH also acquired domain portfolios, as well as a web design

4  blog, demonstrating that web design-information services is highly related to the services

5  rendered by a TLD operator.

6       88.     With the full knowledge of Defendants TLDH, Krueger, and Minds + Machines,

7  on or about January 4, 2010, DotEco LLC had filed a petition for cancellation in the TTAB

8  against Plaintiff's '170 registration on the grounds that the mark was not in use on goods and

9  services claimed by Plaintiff.

10      89.     Ultimately, DotEco LLC's petition to cancel Plaintiff's mark was dismissed with

11 prejudice by the Trademark Trial and Appeal Board in December 2011, for DotEco LLC's lack

12 of evidence and failure to prosecute.

13      90.      Defendants Krueger, Minds + Machine, and TLDH expressly stated they intend

14 to use DotEco LLC as a vehicle to apply to operate the ".eco" TLD using an identical mark in the

15 United States in which Plaintiff has rights.

16      91.     On January 11, 2012, Plaintiff, through counsel, sent a letter to DotEco LLC

17 requesting assurances by no later than January 16, 2011, that it would cease its plans to apply to

18 operate a ".eco" TLD in a manner that inevitably would infringe on Plaintiff's federally

19 protected trademark rights in the United States.  A true and correct copy of January 11, 2012

20 letter to DotEco LLC addressed to Defendant Krueger's attention, the President of Defendant

21 Minds + Machine and Executive Director of Defeant TLDH, is attached hereto as Exhibit G.

22      92.     Defendants DotEco LLC, TLDH, Minds + Machine, and Krueger ignored the

23 request for adequate assurances, implying they intend to proceed as originally planned, and have

24 in fact continued to infringe on the '170 registration in U.S. commerce by using marks, domain

25 names and a trade name that are essentially replicas of Plaintiff's registered mark in connection

26 with providing online information--specific information as requested by customers via the

27 Internet--one of the services expressly covered by the '170 registration, as well as to render

28

1  services in interstate commerce protected by Plaintiff's '170 registration under replicas of

2  Plaintiff's registered mark. The services rendered by DotEco LLC, TLDH, Minds + Machines

3  and Krueger in interstate commerce are almost identical to Big Room's Actual Services rendered

4  in interstate commerce.

5          93.     Furthermore, the marks are used by Defendants Krueger, DotEco LLC, TLDH

6  and Minds + Machines to re-direct the same target audience as Plaintiff's customer-base to

7  Defendant Minds + Machines, a wholly-owned subsidiary of TLDH to which Defendant

8  Krueger, who formed DotEco LLC, has served as its President, while holding the largest

9  percentage of stock ownership in its parent company TLDH and serving as its Executive Director

10 and Chairman.  Minds + Machines offers the same or highly related services as covered by

11 Plaintiff's '170 registration.

12         94.     Defendants Krueger, TLDH, and Minds + Machines knew of direct infringement

13 occurring on domain names and websites hosted on servers under each of their control, were in a

14 position to directly control and monitor the instrumentalities (the domains and servers) used to

15 infringe, and could have monitored their domains and servers, and terminated abusive use, by

16 suspending such use or disabling IP addresses used by their domains and websites.

17         95.     Defendants TLDH, Minds + Machines, and Krueger chose to instead advertise

18 DotEco LLC under an infringing name and mark in knowing contravention of Plaintiff's rights.

19         96.     Defendants Krueger, TLDH, Minds + Machine, and DotEco LLC use the

20 infringing domain name supportdoteco.com registered by Defendant Krueger to engage in

21 infringing activities and to re-direct traffic to Minds + Machines, with full knowledge and

22 complicity of Minds + Machines, DotEco LLC, Defendant Krueger and TLDH.  This is likely to

23 cause confusion in the marketplace, because Plaintiff's customers are likely to mistakenly

24 believe that Plaintiff is somehow affiliated with , Defendants Krueger, Minds + Machines and

25 TLDH, or that such Defendants' services originate with Plaintiff, when in fact they do not.

26         97.     Defendants Krueger, DotEco LLC, Minds + Machine, and TLDH are causing

27 confusion in the marketplace by using Plaintiff's registered mark in interstate commerce for

28

services covered by the '170 registration, including through social media outlets such as Twitter, Facebook and YouTube.  Notwithstanding Plaintiff's repeated requests to cease and desist, Defendants Krueger, Minds + Machine, TLDH and DotEco LLC continue to infringe. Defendants diverge Plaintiff's customers attention to their own competitive services and sites.

98.     By willfully producing and sharing information with the same target audience as Plaintiff under a replica of Plaintiff's mark, Defendants Krueger, Minds + Machine, DotEco LLC and TLDH are causing a likelihood of confusion by making people think that the information originates with, is sponsored by, or being rendered with Plaintiff's permission or approval, when that is not the case.

99.     Defendants TLDH, Krueger, Minds + Machines and DotEco LLC use YouTube, Twitter and Facebook to commercially advertise services covered by Plaintiff's '170 registration using an identical or substantially indistinguishable variation of Plaintiff's mark.

100.     They also mislead the public into mistakenly believing that DotEco LLC is only a customer of Minds + Machines and/or TLDH, when instead, TLDH and Minds + Machines are complicit instrumentalities used to commit the infringing acts complained of herein.

101.     Thus, Plaintiff is suffering irreparable injury to its mark and to its business.

102.     Defendants Krueger, Minds + Machine, TLDH and DotEco LLC have caused, and will continue to cause, irreparable harm to the public and Plaintiff by virtue of their infringing activities and progressive encroachment on Plaintiff's rights.

103.     TLDH's investment reports in February 2012 indicated Defendants Krueger, Mind + Machines, TLDH and DotEco LLC intend to apply to operate the ".eco" TLD in an infringing manner. TLDH has intentionally displayed the infringing mark on its own website and rendered advertising services on behalf of Defendants DotEco LLC, Minds + Machines, and Krueger, knowing that such services and its financial resources are being used, and would continue to be used by them to infringe on Plaintiff's rights.  Plaintiff has suffered, and will suffer irreparable injury unless and until the Court enjoins Defendants from using marks that so nearly resemble or are identical to Plaintiff's mark in the United States in connection with

services covered by Plaintiff's registration.

104.    Defendant DotEco LLC intentionally induced Minds + Machines and TLDH to infringe, continued to supply an infringing product to them with knowledge that the infringer is mislabeling the particular product supplied, and/or permitted them to use its online and/or offline premises while remaining willfully blind to their directly infringing acts and is liable as a contributory infringer.

105.    Plaintiff has no adequate remedy at law.

DEFENDANT TOP LEVEL DOMAIN HOLDINGS' WILLFUL INFRINGEMENT

106.    TLDH is a publicly traded company focused exclusively on acquiring and operating new TLDs.  TLDH intends to make targeted investments in the new TLD space, focusing on both infrastructure technologies and specific TLDs.

107.    On February 21, a press release was issued by TLDH in which its Directors reported that TLDH will shortly be purchasing a second batch of application slots for new TLDs from ICANN, following which the total application slots purchased by TLDH on behalf of itself and clients of Minds + Machines will amount to 40.

108.    For example, on or about November 24, 2011, TLDH acquired an interest in Dot NYC LLC that took its total interest to 65%.  The directors of TLDH believe that the introduction of TLDs will create significant opportunities in both direct investment and service revenue for TLDH.  Defendant Krueger stated on behalf of TLDH as its Deputy Chairman: "TLDH is very well positioned to participate in the current gTLDs application and award process and [the Board] is excited about the prospects for the Company."

109.    TLDH advertised and published on its website the view from Red Hot Penny Shares on TLDH as follows: "…[The TLD program] is going to be a hot story in 2012 and TLDH is the *ONLY* way to invest in it.  Buy up to 13p" (Emphasis in original).

110.    TLDH owns 25% of Defendant DotEco LLC, and yet deceives the public in its advertising materials into mistakenly believing that DotEco LLC is only a "customer" of TLDH and/or Minds + Machines.

111.    DotEco LLC was one of many different vehicles created by TLDH's co-founder Fred Krueger, the President of Minds + Machine, to invest in the new TLD space. TLDH was complicit in causing this to happen after the Priority Filing Date of Plaintiff.  TLDH has intentionally displayed the infringing mark on its own website servers and rendered advertising services on behalf of Defendants DotEco LLC, Minds + Machines, and Krueger, knowing that such services are being used, and would continue to be used by them to infringe on Plaintiff's rights.  Notwithstanding the unsuccessful petition to cancel of DotEco LLC, TLDH continues to use the mark .ECO on its site as if ".ECO" is a customer of TLDH and/or Defendant Minds + Machine, when in fact, DotEco LLC is an active investment vehicle formed by one of TLDH's co-founders, Defendant Krueger, to capitalize on the new TLD space.  It is one of dozens or possibly hundreds. But for Plaintiff, the mark represents its entire business and goodwill.

112.    TLDH uses Plaintiff's mark on its website to attract investors and to provide information services related to the new TLD space.  It also uses the domain name supportdoteco.com to advertise the services of Minds + Machines.

113.    TLDH intentionally induced Minds + Machines and DotEco LLC to infringe, or continued to supply an infringing product to them with knowledge that they are mislabeling the particular product supplied, continued to direct control and monitoring of the instrumentality used by them and Defendant Krueger to infringe the Plaintiff's mark with knowledge that they are mislabeling the instrumentality, and/or allowed them and Defendant Krueger to use its online/offline premises while remaining willfully blind to their directly infringing acts and is liable as a contributory infringer.

### DEFENDANT MINDS + MACHINES' WILLFUL INFRINGEMENT

114.    Minds + Machines is a registry services provider and a wholly-owned subsidiary of TLDH.

115.    Minds + Machines continues to seek to progress in preparing applications for TLDs on its own behalf.

116.    Defendant Krueger controls Minds + Machine through TLDH and as its

1   President.

2       117.    Minds + Machine knowingly uses a confusingly similar domain name,

3   supportdoteco.com to re-direct Internet users to its own site for commercial gain in interstate

4   commerce.

5       118.    Minds + Machines intentionally induced TLDH and Dot Eco, LLC to infringe,

6   continued to direct control and monitoring of the instrumentality used by them to infringe the

7   Plaintiff's mark with knowledge that they are mislabeling the instrumentality used by them to

8   infringe the Plaintiff's mark, and/or permitted them and Defendant Krueger to use its

9   online/offline premises while remaining willfully blind to their directly infringing acts and is

10  liable as a contributory infringer.

11      119.    Plaintiff has no adequate remedy at law.

12              DEFENDANT FRED KRUEGER'S WILLFUL INFRINGEMENT

13      120.    Mr. Krueger organized DotEco LLC on or about August 11, 2008, and is its sole

14  member.  He is also its Chief Executive Officer and Registered Agent.  In 2009, he co-founded

15  Minds + Machines and serves as its President.  In 2008, he co-founded Defendant TLDH (under

16  the name "Hecta Media"), to focus efforts on active investments in websites and domains in the

17  United States, and elsewhere.

18      121.    On information and belief, Mr. Krueger is the moving conscious force behind all

19  of the infringing activities of DotEco LLC, Minds + Machine, and TLDH, and personally

20  directed and directs all of its acts and omissions complained of herein.

21      122.    He has in bad-faith registered domain names, such as supporteco.com and

22  supportdoteco.org ("Krueger Domain Names"), that are confusingly similar to Plaintiff's mark,

23  with bad-faith intent to profit from such domains by misdirecting traffic in interstate commerce

24  to Minds + Machine, has used the Krueger Domain Names for his own benefit on his own site,

25  and has caused, and continues to cause, a mark and trade name substantially indistinguishable to

26  Plaintiff's registered mark, as well as a confusingly similar domain name used by Defendants

27  TLDH, DotEco LLC, and Minds + Machines in interstate commerce.  The Defendants TLDH,

28

1  DotEco LLC, and Minds + Machine are knowingly participating in these wrongful acts.

2      123.    The domain name supportdoteco.com is commercially being used to re-direct to

3  Minds + Machines, a company that offers domain-related services covered by the Plaintiff's

4  registration.  Prior thereto, in 2011, the landing page prominently featured the mark .ECO in a

5  manner that was likely to cause Plaintiff's customers to mistakenly believe that Plaintiff is

6  somehow affiliated with Defendants Krueger and DotEco LLC, when they are not.

7      124.    Defendant Krueger registered the Krueger Domain Names, confusingly similar to

8  Plaintiff's registered mark in bad faith and subsequent to the Priority Filing Date of Plaintiff.

9  Even after abandoning his LLC's efforts to cancel Plaintiff's mark upon Plaintiff providing

10 evidence of use, which led to the TTAB dismissing the Complaint with prejudice, Defendant

11 Krueger has continued to use the Krueger Domain Names in bad faith intent to profit from them

12 in interstate commerce, continues to run a California company in interstate commerce under a

13 trade name that is substantially identical to Plaintiff's registered trademark, and that uses replica

14 marks to offer services in interstate commerce that are protected by Plaintiff's federal trademark

15 registration.  Defendant Krueger acts through DotEco LLC, TLDH and Minds + Machine, with

16 their full knowledge and participation in such activities.  He also uses their resources for his own

17 benefit and did not adequately disclose his interest in DotEco LLC to the public when using

18 TLDH and Minds + Machines resources to support the infringing activities for his benefit.

19     125.    Unless restrained and enjoined, Defendant Krueger will continue to use infringing

20 names, marks, and domain names for the competitive benefit and on behest of TLDH, Minds +

21 Machine, and DotEco LLC.  In 2011, the landing page for *supportdoteco.com* prominently

22 featured Plaintiff's mark, causing a likelihood of confusion.  Defendant Krueger, on his own

23 behalf, and on behalf of Defendants DotEco LLC, Minds + Machine and TLDH has also

24 registered the domain name *supportdoteco.org* with bad faith intent to profit from the domain

25 name.  The domain is not being re-directed at this time, but unless enjoined, can be so re-directed

26 imminently to anywhere that Defendant Krueger so desires.

27     126.    Defendants DotEco LLC and Krueger use the mark .ECO in a stylized format and

28

the substantially indistinguishable mark DOT ECO in interstate commerce on Twitter, YouTube and as a Facebook Page in commercial advertising to render services for and on behalf of themselves and Minds + Machines and TLDH in a manner that infringes on Plaintiff's rights. On YouTube, DotEco LLC and Krueger continue to use Plaintiff's mark to offer an opportunity to subscribe for information offered over the Internet related to TLDH, Minds + Machines and DotEco LLC.

127.   Defendant Krueger is the moving conscious force behind the blatantly infringing activities of DotEco LLC, Minds + Machine and TLDH, had received and made the others aware of the cease and desist letter, and has ignored and caused them to disregard Plaintiff's protest even after the TTAB dismissed DotEco LLC's petition to cancel Plaintiff's mark with prejudice.

128.   Unless and until Defendant Krueger is enjoined, Plaintiff has suffered, and will continue to suffer, irreparable injury as a result of his infringing activities.

129.   Defendant Krueger intentionally induced Dot Eco, LLC, TLDH and Minds + Machines to infringe, or continued to direct control and monitoring of the instrumentality used by them to infringe the Plaintiff's mark with knowledge that they are mislabeling the instrumentality used by them to infringe the Plaintiff's mark, permitted them to use his online/offline premises, while remaining willfully blind to their directly infringing acts and is liable as a contributory infringer.

130.   Plaintiff has no adequate remedy at law.

## FIRST CAUSE OF ACTION

### *Trademark Infringement Under § 1114(1)*

131.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations of this Complaint as though fully set forth here.

132.   Defendants' use in commerce of Plaintiff's .ECO® registered mark and variations thereof is likely to cause confusion, mistake, or to deceive.

133.   Defendants' use in commerce of the Big Room Domain Name and/or KruegerKrueger Domain Names, respectively, is likely to cause confusion, mistake, or to

1 deceive.

2      134.    Defendants' use in commerce of the marks .ECO and DOT ECO is likely to cause

3 confusion, mistake, or to deceive.

4      135.    Defendant TLDH, Minds + Machine, Krueger and DotEco LLC's use in

5 commerce of the trade name DotEco LLC is likely to cause confusion, mistake, or to deceive.

6      136.    The above-described acts of Defendants constitute trademark infringement in

7 violation of 15 U.S.C. § 1114(1), entitling Plaintiff to relief.

8      137.    Defendants have used a reproduction, counterfeit, copy, or colorable imitation in

9 commerce in connection with the sale, offering for sale, distribution, or advertising of goods or

10 services, and such use is likely to cause confusion.

11      138.    Defendants have unfairly profited from the infringing actions alleged herein.

12      139.    By reason of Defendants' acts, Plaintiff has suffered damages to the goodwill

13 associated with its federally registered mark .ECO®.

14      140.    Defendants' activities have irreparably harmed and, if not enjoined, will continue

15 to irreparably harm Plaintiff and Plaintiff's goodwill and business reputation as represented by,

16 and embodied in, its federally registered mark .ECO®.

17      141.    Defendants' activities have irreparably harmed, and if not enjoined, will continue

18 to irreparably harm the general public, which has an interest in being free from confusion,

19 mistake, and deception.

20      142.    By reason of Defendants' acts, Plaintiff's remedy at law is not adequate to

21 compensate it for the injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to

22 preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

23      143.    By reason of Defendants' willful acts, Plaintiff's remedy at law is not adequate to

24 compensate it for the injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to a

25 preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

26      144.    By reason of Defendants' willful acts, Plaintiff is entitled to damages, and that

27 those damages be trebled under 15 U.S.C. § 1117.

28

**RODENBAUGH LAW**
548 Market Street
San Francisco, CA 94104
    -27-
**PLANET.ECO LLC'S COMPLAINT**
Case No. CV12-1812-PA (PLAx)

145.    This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

146.    Defendants Dot Eco, LLC, Fred Krueger, LTDH, and Minds + Machines are liable for contributory and vicarious infringement because they have intentionally induced each of the others, respectively, to infringe, or continued to direct control and monitoring of the instrumentality used by each of the others to infringe the Plaintiff's mark with knowledge that they are mislabeling the instrumentality used by each of them to infringe Plaintiff's mark, and have used their respective premises while remaining willfully blind to each of the others' directly infringing acts and are liable as contributory infringers.

147.    Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines have an apparent or actual partnership, have authority to bind one another in transactions or exercise joint ownership or control over the infringing services.

148.    TLDH is liable for the acts of Minds + Machines and/or Dot Eco LLC because the circumstances of the organizations are such that the corporate form should be disregarded, as the direct or indirect subsidiary(ies) act as agent(s) of the parent corporation, and the parent corporation, TLDH aids, abets and ratifies the acts of such direct or indirect subsidiary(ies).

149.    Fred Krueger is liable for the torts of TLDH, Minds + Machines and Dot Eco, LLC because he specifically directed or authorized the wrongful acts, and was personally involved with them.

150.    The complained acts constitute willful, deliberate and intentional infringement of Plaintiff's federal registered trademark in violation of Section 32(1) of the Lanham Act (15 U.S.C. Section 1114(1)).

## SECOND CAUSE OF ACTION

### *Trademark Infringement and False Designation of Origin Under 15 U.S.C. § 1125(a)*

151.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations of this Complaint as though fully set forth here.

152.    Defendants' use in commerce of Plaintiff's mark .ECO® and variations thereof,

the infringing trade name DotEco LLC and/or infringing Big Room Domain Name and/or Krueger Domain Names, and the marks .ECO and DOT ECO is likely to cause confusion, or to cause mistake, or to deceive the relevant public that such designations, and/or name, and/or domain name(s), and/or mark(s) are authorized, sponsored, or approved by, or are affiliated with Plaintiff.

153.   Defendants' use of Plaintiff's mark and variations thereof and the infringing trade name, and/or designations, and/or domain name(s), is likely to cause confusion among the general public.

154.   The above-described acts of Defendants constitute trademark and/or trade name infringement of Plaintiff's mark .ECO, false designations of origin, and/or false descriptions and misrepresentations of fact, in violation of 15 U.S.C. § 1125(a), entitling Plaintiff to relief.

155.   Defendants have unfairly profited from the actions alleged.

156.   By reason of Defendants' acts alleged herein, Plaintiff has suffered damage to the goodwill associated with Plaintiff and its mark .ECO.

157.   Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

158.   By reason of Defendants' acts alleged herein, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

159.   By reason of Defendants' willful acts, Plaintiff is entitled to damages, and that those damages be trebled, under 15 U.S.C. § 1117.

160.   This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

161.   Defendants Dot Eco, LLC, Fred Krueger, LTDH, and Minds + Machines are liable for contributory and vicarious infringement because they have intentionally induced each of the others, respectively, to infringe, or continued to direct control and monitoring of the

1  instrumentality used by each of the others to infringe the Plaintiff's mark with knowledge that

2  they are mislabeling the instrumentality used by each of them to infringe Plaintiff's mark, and

3  have used their respective premises while remaining willfully blind to each of the others' directly

4  infringing acts and are liable as contributory infringers.

5      162.    Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines have an

6  apparent or actual partnership, have authority to bind one another in transactions or exercise joint

7  ownership or control over the infringing services.

8      163.    TLDH is liable for the acts of Minds + Machines and/or Dot Eco LLC because the

9  circumstances of the organizations are such that the corporate form should be disregarded, as the

10  direct or indirect subsidiary(ies) act as agent(s) of the parent corporation, and the parent

11  corporation, TLDH aids, abets and ratifies the acts of such direct or indirect subsidiary(ies).

12      164.    Fred Krueger is liable for the torts of TLDH, Minds + Machines and Dot Eco,

13  LLC because he specifically directed or authorized the wrongful acts, and was personally

14  involved with them.

15      165.    The Complained acts constitute willful, deliberate and intentional false

16  designations of origin as to services rendered by Defendants and unfair competition in violation

17  of Section 43(a) of the Lanham Act (15 U.S.C. Section 1125(a)).

18      166.    The Complained acts also constitute willful, deliberate and intentional false and

19  misleading descriptions of fact, false and misleading representations of fact and false advertising

20  in violation of Section 43(a) of the Lanham Act (15 U.S.C. Section 1125(a)).

21                      **THIRD CAUSE OF ACTION**

22              ***Counterfeiting Under 15 U.S.C. § 1114(1)***

23      167.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations

24  of this Complaint as though fully set forth here.

25      168.    Defendants' use in commerce of Plaintiff's .ECO registered mark and

26  substantially indistinguishable variations thereof is likely to cause confusion, mistake, or to

27  deceive.

28  RODENBAUGH LAW                           PLANET.ECO LLC'S COMPLAINT
    548 Market Street                        Case No. CV12-1812-PA (PLAx)
    San Francisco, CA 94104          -30-

169.    Defendants' use in commerce of the marks .ECO and DOT ECO is likely to cause confusion, mistake, or to deceive.

170.    The Big Room Domains and Krueger Domain Names are substantially indistinguishable, and thus counterfeits of, Plaintiff's .ECO registered mark, and use in commerce of the Big Room Domain Names and Krueger Domains are likely to cause confusion, mistake, or to deceive.

171.    The above-described acts of Defendants constitute counterfeiting in violation of 15 U.S.C. § 1114(1), entitling Plaintiff to relief.

172.    Defendants have unfairly profited from the infringing actions alleged herein.

173.    By reason of Defendants' acts, Plaintiff has suffered damage to the goodwill associated with Plaintiff's .ECO mark.

174.    Defendants' activities have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and its federally registered .ECO mark.

175.    By reason of Defendants' acts, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

176.    By reason of Defendants' use of the counterfeit marks and domain names alleged herein, Plaintiff is entitled to recover Defendants' profits, actual damages, and the costs of this action under 15 U.S.C. § 1117.  Alternatively, by reason of Defendants' willful use of the counterfeit marks, Plaintiff is entitled to recover statutory damages under 15 U.S.C. § 1117, on election by Plaintiff, in an amount of up to $2,000,000 for each counterfeit mark and domain name per type of service rendered or offered.

177.    This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

178.    Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines are liable for contributory and vicarious infringement because they have intentionally induced each of the others, respectively, to infringe, or continued to direct control and monitoring of the

1  instrumentality used by each of the others to infringe the Plaintiff's mark with knowledge that

2  they are mislabeling the instrumentality used by each of them to infringe Plaintiff's mark, and

3  have used their respective premises while remaining willfully blind to each of the others' directly

4  infringing acts and are liable as contributory infringers.

5      179.    Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines have an

6  apparent or actual partnership, have authority to bind one another in transactions or exercise joint

7  ownership or control over the infringing services.

8      180.     TLDH is liable for the acts of Minds + Machines and/or Dot Eco LLC because

9  the circumstances of the organizations are such that the corporate form should be disregarded, as

10 the direct or indirect subsidiary(ies) act as agent(s) of the parent corporation, and the parent

11 corporation, TLDH aids, abets and ratifies the acts of such direct or indirect subsidiary(ies).

12     181.    Fred Krueger is liable for the torts of TLDH, Minds + Machines and Dot Eco,

13 LLC because he specifically directed or authorized the wrongful acts, and was personally

14 involved with them.

15     182.    The complained acts constitute trademark counterfeiting in violation of Section

16 32(1) of the Lanham Act (15 U.S.C. Section 1114(1)).

17

18              **FOURTH CAUSE OF ACTION**

19          ***Cybersquatting Under 15 U.S.C. § 1125(d)***

20     183.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations

21 of this Complaint as though fully set forth here.

22     184.    Defendants registered, trafficked in, and/or used the Big Room Domain Name

23 and/or the Krueger Domain Names with a bad-faith intent to profit from Plaintiff's registered

24 mark .ECO®.

25     185.    The Big Room Domain Name and Krueger Domain Names are confusingly

26 similar to Plaintiff's registered .ECO® mark.

27     186.    Defendants have no intellectual property rights or any other right in Plaintiff's

28

.ECO® mark in the United States.

187.    Defendants' registration, use, and/or trafficking in the Big Room Domain Name and/or Krueger Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Plaintiff to relief.

188.    By reason of Defendants' acts alleged herein, Plaintiff's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants.  Accordingly, Plaintiff is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

189.    By reason of Defendants' acts alleged herein, Plaintiff is entitled to recover Defendants' profits, actual damages, and the costs of the action, or statutory damages under 15 U.S.C. § 1117 on election by Plaintiff, in an amount of up to $100,000 for each domain name found to constitute cybersquatting.

190.    This is an exceptional case, making Plaintiff eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

191.    Defendants Dot Eco, LLC, Fred Krueger, LTDH, and Minds + Machines are liable for contributory and vicarious infringement because they have intentionally induced each of the others, respectively, to infringe, or continued to direct control and monitoring of the instrumentality used by each of the others to infringe the Plaintiff's mark with knowledge that they are mislabeling the instrumentality used by each of them to infringe Plaintiff's mark, and have used their respective premises while remaining willfully blind to each of the others' directly infringing acts and are liable as contributory infringers.

192.    Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines have an apparent or actual partnership, have authority to bind one another in transactions or exercise joint ownership or control over the infringing services.

193.    TLDH is liable for the acts of Minds + Machines and/or Dot Eco LLC because the circumstances of the organizations are such that the corporate form should be disregarded, as the direct or indirect subsidiary(ies) act as agent(s) of the parent corporation, and the parent corporation, TLDH aids, abets and ratifies the acts of such direct or indirect subsidiary(ies).

194.     Fred Krueger is liable for the torts of TLDH, Minds + Machines and Dot Eco, LLC because he specifically directed or authorized the wrongful acts, and was personally involved with them.

### FIFTH CAUSE OF ACTION

#### *Unfair Competition Under Cal. Bus. & Prof. Code § 17200*

195.     Plaintiff realleges and incorporates by reference each of the aforesaid allegations of this Complaint as though fully set forth here.

196.     Defendants' acts, as described in this Complaint, are unlawful, unfair, and/or fraudulent, and have caused damage to Plaintiff and injury its business, in violation of Section 17200 of the California Business and Professions Code.

197.     As a result of Defendants' past and continuing wrongful acts, Plaintiff has incurred damages in an amount to be determined, including ongoing and irreparable damage to its .ECO mark, so as to make it impossible for Plaintiff to legally compete.

198.     The Defendants' conduct is causing direct injury to Plaintiff's business and Plaintiff has suffered in fact and has lost money and property as a result of such unfair competition.

199.     Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines are liable for contributory and vicarious infringement because they have intentionally induced each of the others, respectively, to infringe, or continued to direct control and monitoring of the instrumentality used by each of the others to infringe the Plaintiff's mark with knowledge that they are mislabeling the instrumentality used by each of them to infringe Plaintiff's mark, and have used their respective premises while remaining willfully blind to each of the others' directly infringing acts and are liable as contributory infringers.  These Defendants can, and chose not to directly control the actual infringing activities occurring on the sites of TLDH and Minds + Machines.

200.     Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines have an apparent or actual partnership, have authority to bind one another in transactions or exercise joint

1 | ownership or control over the infringing services.

2 |      201.    Defendant Krueger is personally liable as an officer or owner of Dot Eco, LLC,

3 | TLDH, and Minds + Machines because he actively and directly participated in the unfair

4 | business practices.

5 |      202.    TLDH is liable for the acts of Minds + Machines and/or Dot Eco LLC because the

6 | circumstances of the organizations are such that the corporate form should be disregarded, as the

7 | direct or indirect subsidiary(ies) act as agent(s) of the parent corporation, and the parent

8 | corporation, TLDH aids, abets and ratifies the acts of such direct or indirect subsidiary(ies).

9 |      203.    Fred Krueger is liable for the torts of TLDH, Minds + Machines and Dot Eco,

10 | LLC because he specifically directed or authorized the wrongful acts, and was personally

11 | involved with them.

12 | **SIXTH CAUSE OF ACTION**

13 | ***Federal and State Common Law Unfair Competition***

14 |      204.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations

15 | of this Complaint as though fully set forth here.

16 |      205.    Defendants have and continue to unfairly compete with Plaintiff by use of the

17 | infringing trade name DotEco LLC and/or infringing Big Room Domain Name and/or Krueger

18 | Domain Names, and the marks .ECO and DOTECO, with the intent to trade off the goodwill of

19 | Plaintiff's mark.

20 |      206.    Defendants continued wrongful use of the aforesaid trade name, marks,

21 | designations, and domain names will cause damage to Plaintiff by continuing unfairly to

22 | compete with Plaintiff.

23 |      207.    As a result of Defendants' past and continued wrongful acts, Plaintiff has incurred

24 | damages, including ongoing damage to its mark.

25 |      208.    Defendants Dot Eco, LLC, Fred Krueger, LTDH, and Minds + Machines are

26 | liable for contributory and vicarious infringement because they have intentionally induced each

27 | of the others, respectively, to infringe, or continued to direct control and monitoring of the

28 |

1  instrumentality used by each of the others to infringe the Plaintiff's mark with knowledge that

2  they are mislabeling the instrumentality used by each of them to infringe Plaintiff's mark, and

3  have used their respective premises while remaining willfully blind to each of the others' directly

4  infringing acts and are liable as contributory infringers.

5  209.  Defendants Dot Eco, LLC, Fred Krueger, TLDH, and Minds + Machines have an

6  apparent or actual partnership, have authority to bind one another in transactions or exercise joint

7  ownership or control over the infringing services.

8  210.  TLDH is liable for the acts of Minds + Machines and/or Dot Eco LLC because the

9  circumstances of the organizations are such that the corporate form should be disregarded, as the

10  direct or indirect subsidiary(ies) act as agent(s) of the parent corporation, and the parent

11  corporation, TLDH aids, abets and ratifies the acts of such direct or indirect subsidiary(ies).

12  211.  Fred Krueger is liable for the torts of TLDH, Minds + Machines and Dot Eco,

13  LLC because he specifically directed or authorized the wrongful acts, and was personally

14  involved with them.

15  212.  The complained acts constitute trademark infringement, palming off, and unfair

16  competition in violation of the common law of the State of California and the federal common

17  law.

18  **SEVENTH CAUSE OF ACTION**

19  *State and Federal Common Law Trademark Infringement*

20  213.  Plaintiff realleges and incorporates by reference each of the aforesaid allegations

21  of this Complaint as though fully set forth here.

22  214.  Defendant Fred Krueger, TLDH, Minds + Machines and Dot Eco, LLC has

23  without permission, authority or license from Plaintiff, participated in or otherwise knowingly

24  contributed to the affixation, application, and/or use by one another and their customers/clients

25  and others in connection with the advertisement, display, promotion, marketing, distribution,

26  publication, provision, offering for sale and/or sale of goods or services, of false descriptions and

27  representations, including words which tend to falsely describe or represent such goods or

28

services as Plaintiff's and/or affiliated with Plaintiff, or the holding out of Dot Eco, LLC as a customer versus a direct investment controlled by Fred Krueger, TLDH, and/or Minds + Machines, or alternatively which tend to describe or represent the mark .ECO as affiliated with one another or their respective customers/clients, and have participated in or otherwise knowingly contributed to causing such goods or services to enter into interstate commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to the detriment of Plaintiff.

215.   Each of Fred Krueger's, TLDH's, Minds + Machines, and Dot Eco, LLC's participation in or otherwise knowing contribution to the advertisement, display, promotion, marketing, distribution, publication, provision, offering for sale and/or sale of goods or services incorporating unauthorized use of Plaintiff's .ECO® constitutes false descriptions and representations tending to falsely to describe or represent the unauthorized goods or services of each other.

216.   Such Defendants' respective contributory conduct in connection with their clients/customers and others' respective unauthorized and unlawful acts of unfair competition, and each of them, have enabled, assisted, aided and abetted their clients/customers and others to trade unlawfully upon the established goodwill and reputation of Plaintiff and its licensees.  Such Defendants are thus unjustly enriching themselves at the expense and to the damage and injury to Plaintiff, and unless enjoined by the Court, will further impair the value of the .ECO® mark.  By reason of the aforesaid acts, the continued misuse by such Defendants and their respective customers/clients of the .ECO® mark, or the likeness thereof, has caused, and unless restrained will continue to causes serious, irreparable injury to Plaintiff.

217.   Plaintiff has no adequate remedy at law and has suffered, and is continuing to suffer harm and damage as a result of such Defendants' respective acts of contributory unfair competition in amounts within the jurisdiction of this Court, thus far not determined but which amounts should be trebled pursuant to 15 U.S.C. Section 1117.

218.   Such Defendants have directly or indirectly been notified of its infringing activity

1   and illegal activity.  Notwithstanding clear requests to stop, Plaintiff is informed and believes,

2   and upon that basis alleges, that such Defendants have each willfully and knowingly continued

3   its wrongful conduct in violation of Plaintiff's rights through the date of the filing of this

4   Amended Complaint.

5                           **EIGHTH CAUSE OF ACTION**

6                       *Contributory Infringement of Section 32*

7        219.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations

8   of this Complaint as though fully set forth here.

9        220.    The contributory conduct of Defendants Krueger, Minds + Machine, TLDH and

10  Dot Eco, LLC in connection with each of their own, and their respective clients/customers and

11  others' respective unauthorized and unlawful acts of infringement of Plaintiff's federally

12  registered mark, have been enabled, assisted, aided and abetted each of their own, and such

13  clients/customers and others, to use in commerce Plaintiff's mark, or a reproduction, counterfeit,

14  copy, or colorable imitation thereof, in connection with such use was or is likely to cause

15  confusion or mistake, or to deceive, constitutes acts of contributory infringement in violation of

16  Section 32 of the Lanham Act of 1946, 15 U.S.C Section 1114, as amended.

17       221.    Moreover, such Defendants' contributory infringement in connection with its

18  clients/customers and others' respective unauthorized and unlawful acts of reproduction,

19  counterfeit, copy, or colorable imitation of Plaintiff's registered mark, and applications thereof to

20  any ads, signs, prints, wrappers, in connection with the sale, offering for sale, distribution, or

21  advertising of any goods or services in connection with such use was or is likely to cause

22  confusion or mistake, or to deceive, constituting further acts of contributing trademark

23  infringement in violation of Section 32 of the Lanham Act of 1946, 15 U.S.C. Section 1114, as

24  amended.

25       222.    Such Defendants' respective contributory conduct as alleged hereinabove, are

26  business practices likely to deceive, confuse or cause mistake by the purchasing public, and

27  constitutes acts of contributory infringement, all in violation of Section 32 of the Lanham Act of

28  RODENBAUGH LAW                                      PLANET.ECO LLC'S COMPLAINT
    548 Market Street                                  Case No. CV12-1812-PA (PLAx)
    San Francisco, CA 94104        -38-

1    1946, 15 U.S.C. Section 1114, as amended.

2         223.    Plaintiff has no adequate remedy at law and has suffered, and is continuing to

3    suffer, harm and damage as a result of the Defendant's acts in contributory violation of Section

4    32 of the Lanham Act of 1946, in amounts that should be trebled pursuant to 15 U.S.C. Section

5    1117.

6                              **NINTH CAUSE OF ACTION**

7                              *Accounting -- Common Law*

8         224.    Plaintiff realleges and incorporates by reference each of the aforesaid allegations

9    of this Complaint as though fully set forth here.

10        225.    Defendants' activities, as alleged above, have violated Plaintiff's rights in the

11   .ECO ® mark under common law.

12        226.    As a direct result of the infringing activities, Defendants have been unjustly

13   enriched through fraudulent conversion of Plaintiff's goodwill and rights in its trademark into

14   their own profits through the manner in which they are offering highly related or identical

15   services that has caused Plaintiff to lose sales of its genuine goods and services.

16        227.    As a direct result of Defendants' misconduct, Defendants have received

17   substantial profit, to which Plaintiff is entitled under common law.

18        228.    The amount of said profits is unknown to Plaintiff and cannot be ascertained

19   without an accounting.

20                              **REQUEST FOR RELIEF**

21             Therefore, Plaintiff respectfully requests judgment as follows:

22             1.    That an order be entered enjoining Defendants, their agents,

23   representatives, employees, assigns and suppliers, and all persons acting in concert or privity

24   with Defendants, from engaging in any of the following activities:

25                  a.  Registering, trafficking in, and using, in any manner, any .ECO and/or

26   DOTECO and/or confusingly similar trademarks(s), trade name(s), and/or domain name(s),

27   including in relation to the rendering of domain registry services;

28   | **RODENBAUGH LAW** | **PLANET.ECO LLC'S COMPLAINT** |
     | 548 Market Street | Case No. CV12-1812-PA (PLAx) |
     | San Francisco, CA 94104 | |

1           c.  Transferring, releasing, deleting, and assigning any .ECO and/or DOTECO

2  and/or confusingly similar trademarks(s), trade name(s), and/or domain name(s);

3           d.  Engaging in trademark infringement, trade name infringement, counterfeiting,

4  unfair competition, false designation of origin, passing off, and false advertising against Plaintiff

5  or misappropriation of Plaintiff's trademark rights; and

6           e.  Assisting, aiding, or abetting any other person or business entity in engaging in

7  or performing any of the activities referred to in subparagraphs (a) through (d) above.

8          2. That the United States Trademark Trial and Appeal Board enter an order

9  requiring Defendant Big Room to expressly withdraw its petition to cancel Plaintiff's .ECO®

10  mark with prejudice.

11          3. That the Court enter a final judgment that Defendants have:

12           a.  violated Plaintiff's rights in Plaintiff's .ECO mark in violation of 15 U.S.C. §

13  1125(d);

14           b.  violated Plaintiff's rights in Plaintiff's .ECO mark in violation of 15 U.S.C. §

15  1114(1);

16           c.  violated Plaintiff's rights in Plaintiff's .ECO mark in violation of 15 U.S.C. §

17  1125(a);

18           d.  violated Plaintiff's rights in Plaintiff's .ECO mark in violation of in violation

19  of Section 17200 of the California Business and Professions Code. and the state and federal

20  common law.

21          4. And that the Court enter a Final Judgment:

22           a. Permanently enjoining Defendants, their agents, representatives, employees,

23  assigns and suppliers, and all persons acting in concert or privity with Defendants, from

24  engaging in the activities described in Paragraphs l above;

25           b. Ordering Defendants to transfer the Big Room Domain Name, the Krueger

26  Domain Names, and any other domain name(s) that they own or control, directly or indirectly, or

27  that was registered at their direction, request, or instruction, that are confusingly similar to

28

RODENBAUGH LAW                            PLANET.ECO LLC'S COMPLAINT
548 Market Street                                  Case No. CV12-1812-PA (PLAx)
San Francisco, CA 94104         -40-

1    Plaintiff's .ECO® registered mark to Plaintiff;

2            c. Ordering Defendants to engage in corrective advertising at their own expense to

3    the extent necessary to correct any consumer confusion or misperceptions resulting from

4    Defendants' unlawful acts complained of above;

5            d. Ordering Defendants to account to Plaintiff for, and disgorge, all profits they

6    have derived by reason of the unlawful acts complained of above;

7            e. Ordering Defendants to pay treble damages;

8            f. Ordering Defendants to pay statutory damages in an amount up to $2,000,000

9    per mark for counterfeiting of the Plaintiff's .ECO® registered mark;

10           g. Ordering Defendants to pay statutory damages in an amount of up to $100,000

11   for each domain name found to constitute cybersquatting;

12           h. Ordering Defendants to pay Plaintiff's reasonable attorney fees, prejudgment

13   interest, and costs of this action;

14           i. Ordering Defendants to file with the Court and serve upon Plaintiff a written

15   report under oath setting forth in detail the manner and form in which Defendants have complied

16   with the injunction and judgment within thirty (30) days after the service of the injunction and

17   judgment upon Defendants;

18           j. Ordering Defendants to pay punitive damages in an amount to be determined,

19   based upon the foregoing acts of Defendants;

20           k. That the Court require Defendants to notify their investors, commercial

21   associates, dealers, master distributors, suppliers, customers, partners, and clients of this Order;

22           l. Declaring Plaintiff's trademark registration for .ECO valid;

23           m. . That the Court retain jurisdiction of this action for the purpose of enabling

24   Plaintiff to apply to the Court, at any time, for such further orders and directions as may be

25   necessary or appropriate for the interpretation or execution of any order entered in this action, for

26   the modification of any such order, for the enforcement or compliance herewith, and for

27   punishment of any violation thereof; and

28

1          n.  That the Court require a full and complete accounting of all monies received

2    by Defendants as a result of the infringement;

3          o.  That Defendants be required to deliver to Plaintiff, all merchandise, packaging,

4    labels, boxes, cartons, advertising, brochures, plates, models, documents, advertising and

5    promotional materials and other things, possessed, used or distributed by Defendants or on their

6    behalf, which refer to the mark .ECO or any other name, mark, or design confusingly similar to

7    the registered .ECO® mark without authorization from Plaintiff; and

8          p.  Granting Plaintiff such other relief as the Court may deem appropriate.

9                              **DEMAND FOR JURY TRIAL**

10          Plaintiff respectfully requests that this case be decided by a jury

11

12   DATED: April 12, 2012                     Respectfully submitted,

13

14

15                              By: _Mike Rodenbaugh_

16                                   Michael L. Rodenbaugh
                                     RODENBAUGH LAW
17                                   548 Market Street
                                     San Francisco, CA 94104
18                                   (415) 738-8087 tel/fax
                                     info@rodenbaugh.com
19

20                                   **Attorney for Plaintiff PLANET.ECO**
                                     **LLC**
21

22

23

24

25

26

27

EXHIBIT A

# United States of America

## United States Patent and Trademark Office

# .eco

**Reg. No. 3,716,170**
Registered Nov. 24, 2009

**Int. Cl.: 42**

**SERVICE MARK
PRINCIPAL REGISTER**

COLORED PLANET CONNEXTION (CONNECTICUT CORPORATION), DBA COLORED
  PLANET,
40 STIMSON RD
NEW HAVEN, CT 06511

FOR: DESIGN, CREATION, HOSTING AND MAINTENANCE OF INTERNET SITES FOR
THIRD PARTIES; HOSTING OF DIGITAL CONTENT ON THE INTERNET; PROVIDING
SPECIFIC INFORMATION AS REQUESTED BY CUSTOMERS VIA THE INTERNET, IN
CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 12-2-2008; IN COMMERCE 9-18-2009.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PAR-
TICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-452,991, FILED 4-20-2008.

ALICE BENMAMAN, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

EXHIBIT B





**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Assignments on the Web > Trademark Query

# Trademark Assignment Abstract of Title

## Total Assignments: 2

**Serial #:** 77452991    **Filing Dt:** 04/20/2008    **Reg #:** 3716170    **Reg. Dt:** 11/24/2009

**Registrant:** Colored Planet Connexion

**Mark:** .ECO

## Assignment: 1

**Reel/Frame:** 4715/0630    **Received:** 02/07/2012    **Recorded:** 01/29/2012    **Pages:** 2

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Assignor:** BOONE, MOSES      **Exec Dt:** 01/29/2012

     **Entity Type:** INDIVIDUAL

     **Citizenship:** UNITED STATES

**Assignee:** PLANET.ECO LLC      **Entity Type:** LIMITED LIABILITY COMPANY

**Composed of:**      **Citizenship:** UNITED STATES
 COMPOSED OF JEAN WILLIAM, CEO MOSES BOONE, PRES.

45 WEST NORTH ST
STAMFORD, CONNECTICUT 06902

**Correspondent:** COLORED PLANET CONNEXION
40 STIMSON RD
NEW HAVEN, CONNECTICUT 06511

## Assignment: 2

**Reel/Frame:** 4716/0715    **Received:** 02/10/2012    **Recorded:** 01/29/2012    **Pages:** 2

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Assignor:** BOONE, MOSES      **Exec Dt:** 01/29/2012

     **Entity Type:** INDIVIDUAL

     **Citizenship:** UNITED STATES

**Assignee:** PLANET.ECO LLC      **Entity Type:** LIMITED LIABILITY COMPANY

**Composed of:**      **Citizenship:** CONNECTICUT
 COMPOSED OF JEAN WILLIAM, CEO MOSES BOONE PRES.

45 WEST NORTH ST
STAMFORD, CONNECTICUT 06902

**Correspondent:** COLORED PLANET CONNEXION
40 STIMSON RD
NEW HAEN, CONNECTICUT 06511

Search Results as of: 02/21/2012 06:58 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.3
Web interface last modified: Dec 1, 2011 v.2.3

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT |

EXHIBIT C

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2008)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 77523015
### Filing Date: 07/15/2008

---

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 77523015 |
| **MARK INFORMATION** | |
| *MARK | .ECO |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | .ECO |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **REGISTER** | Principal |
| **APPLICANT INFORMATION** | |
| *OWNER OF MARK | Big Room, Inc. |
| *STREET | 332-237 Keefer Street |
| *CITY | Vancouver |
| *STATE (Required for U.S. applicants) | British Columbia |
| *COUNTRY | Canada |
| *ZIP/POSTAL CODE (Required for U.S. applicants only) | V6A1X6 |
| PHONE | 303 951 3525 |
| FAX | 303 295 9701 |
| EMAIL ADDRESS | sbrushaber@shblegal.com |
| **LEGAL ENTITY INFORMATION** | |
| TYPE | corporation |
| STATE/COUNTRY OF INCORPORATION | Canada |

## GOODS AND/OR SERVICES AND BASIS INFORMATION

| | |
|---|---|
| *INTERNATIONAL CLASS | 035 |
| *IDENTIFICATION | Internet services; domain name services; global information and directory services, including the administration, registration, assignment and management of computer network information, network addresses, demographic information of network addresses and domain names; educational, advisory, information and consulting services relating to the aforementioned services |
| FILING BASIS | SECTION 1(b) |
| FILING BASIS | SECTION 44(d) |
| FOREIGN APPLICATION NUMBER | 1398122 |
| FOREIGN APPLICATION COUNTRY | Canada |
| FOREIGN FILING DATE | 06/04/2008 |

## ATTORNEY INFORMATION

| | |
|---|---|
| NAME | Susan Brushaber |
| FIRM NAME | Schuchat, Herzog & Brenman, LLC |
| STREET | 1900 Wazee Street |
| INTERNAL ADDRESS | Suite 300 |
| CITY | Denver |
| STATE | Colorado |
| COUNTRY | United States |
| ZIP/POSTAL CODE | 80202 |
| PHONE | 303 951 3525 |
| FAX | 303 295 9701 |
| EMAIL ADDRESS | sbrushaber@shblegal.com |
| AUTHORIZED TO COMMUNICATE VIA EMAIL | Yes |

## CORRESPONDENCE INFORMATION

| | |
|---|---|
| NAME | Susan Brushaber |
| FIRM NAME | Schuchat, Herzog & Brenman, LLC |
| STREET | 1900 Wazee Street |

| | |
|---|---|
| **INTERNAL ADDRESS** | Suite 300 |
| **CITY** | Denver |
| **STATE** | Colorado |
| **COUNTRY** | United States |
| **ZIP/POSTAL CODE** | 80202 |
| **PHONE** | 303 951 3525 |
| **FAX** | 303 295 9701 |
| **EMAIL ADDRESS** | sbrushaber@shblegal.com |
| **AUTHORIZED TO COMMUNICATE VIA EMAIL** | Yes |
| **FEE INFORMATION** | |
| **NUMBER OF CLASSES** | 1 |
| **FEE PER CLASS** | 325 |
| ***TOTAL FEE DUE** | 325 |
| ***TOTAL FEE PAID** | 325 |
| **SIGNATURE INFORMATION** | |
| **SIGNATURE** | /Trevor Bowden/ |
| **SIGNATORY'S NAME** | Trevor Bowden |
| **SIGNATORY'S POSITION** | Secretary |
| **DATE SIGNED** | 07/15/2008 |

PTO Form 1478 (Rev 9/2006)
OMB No. 0651-0009 (Exp 12/31/2008)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 77523015
### Filing Date: 07/15/2008

## To the Commissioner for Trademarks:

**MARK:** .ECO (Standard Characters, see mark)
The literal element of the mark consists of .ECO.
The mark consists of standard characters, without claim to any particular font, style, size, or color.

The applicant, Big Room, Inc., a corporation of Canada, having an address of
 332-237 Keefer Street
 Vancouver, British Columbia V6A1X6
 Canada
requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.

 International Class 035: Internet services; domain name services; global information and directory services, including the administration, registration, assignment and management of computer network information, network addresses, demographic information of network addresses and domain names; educational, advisory, information and consulting services relating to the aforementioned services
Intent to Use: The applicant has a bona fide intention to use or use through the applicant's related company or licensee the mark in commerce on or in connection with the identified goods and/or services. (15 U.S.C. Section 1051(b)).

Priority based on foreign filing: Applicant has a bona fide intention to use the mark in commerce on or in connection with the identified goods and/or services and asserts a claim of priority based on Canada application number 1398122, filed 06/04/2008. 15 U.S.C. Section 1126(d), as amended.

The applicant hereby appoints Susan Brushaber of Schuchat, Herzog & Brenman, LLC
 Suite 300
 1900 Wazee Street
 Denver, Colorado 80202
 United States
to submit this application on behalf of the applicant.
 Correspondence Information: Susan Brushaber
     Suite 300
     1900 Wazee Street
     Denver, Colorado 80202
     303 951 3525(phone)

303 295 9701(fax)

sbrushaber@shblegal.com (authorized)

A fee payment in the amount of $325 has been submitted with the application, representing payment for 1 class(es).

## Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.


Signature: /Trevor Bowden/   Date Signed: 07/15/2008
Signatory's Name: Trevor Bowden
Signatory's Position: Secretary


RAM Sale Number: 4154
RAM Accounting Date: 07/16/2008

Serial Number: 77523015
Internet Transmission Date: Tue Jul 15 20:01:49 EDT 2008
TEAS Stamp: USPTO/BAS-65.102.249.205-200807152001490
66951-77523015-400142073f5a9788c19c70685
317db5cf-CC-4154-20080709091612599325

.ECO

**EXHIBIT D**

## Trademark Snap Shot Amendment & Mail Processing Stylesheet
### (Table presents the data on Amendment & Mail Processing Complete)

### OVERVIEW

| | | | |
|---|---|---|---|
| SERIAL NUMBER | 77523015 | FILING DATE | 07/15/2008 |
| REG NUMBER | 0000000 | REG DATE | N/A |
| REGISTER | PRINCIPAL | MARK TYPE | SERVICE MARK |
| INTL REG # | N/A | INTL REG DATE | N/A |
| TM ATTORNEY | KAUFMAN, LAURIE R | L.O. ASSIGNED | 103 |

### PUB INFORMATION

| | |
|---|---|
| RUN DATE | 04/04/2009 |
| PUB DATE | N/A |
| STATUS | 661-RESPONSE AFTER NON-FINAL-ACTION-ENTERED |
| STATUS DATE | 04/03/2009 |
| LITERAL MARK ELEMENT | .ECO |

| | | | |
|---|---|---|---|
| DATE ABANDONED | N/A | DATE CANCELLED | N/A |
| SECTION 2F | NO | SECTION 2F IN PART | NO |
| SECTION 8 | NO | SECTION 8 IN PART | NO |
| SECTION 15 | NO | REPUB 12C | N/A |
| RENEWAL FILED | NO | RENEWAL DATE | N/A |
| DATE AMEND REG | N/A | | |

### FILING BASIS

| FILED BASIS | | CURRENT BASIS | | AMENDED BASIS | |
|---|---|---|---|---|---|
| 1 (a) | NO | 1 (a) | NO | 1 (a) | NO |
| 1 (b) | YES | 1 (b) | YES | 1 (b) | NO |
| 44D | YES | 44D | YES | 44D | NO |
| 44E | NO | 44E | YES | 44E | YES |
| 66A | NO | 66A | NO | | |
| NO BASIS | NO | NO BASIS | NO | | |

### MARK DATA

| | |
|---|---|
| STANDARD CHARACTER MARK | YES |
| LITERAL MARK ELEMENT | .ECO |

| MARK DRAWING CODE | 4-STANDARD CHARACTER MARK |
|---|---|
| COLOR DRAWING FLAG | NO |

## CURRENT OWNER INFORMATION

| PARTY TYPE | 10-ORIGINAL APPLICANT |
|---|---|
| NAME | Big Room, Inc. |
| ADDRESS | 332-237 Keefer Street<br>Vancouver, V6A1X6 |
| ENTITY | 03-CORPORATION |
| CITIZENSHIP | Canada |

## GOODS AND SERVICES

| INTERNATIONAL CLASS | 038 |
|---|---|
| DESCRIPTION TEXT | Database subscription services, namely the provision of access to information regarding environmental, social and governance characteristics and/or performance; database services, namely the provision of access to information regarding domain names and to obtain data relating to network addresses and holders of domain names and to obtain disclosure of environmental, social and governance characteristics and/or performance; advisory, information and consultancy services relating to the aforementioned services |

| INTERNATIONAL CLASS | 042 |
|---|---|
| DESCRIPTION TEXT | Internet services, namely the operation of a trust-mark system comprising management, verification and/or disclosure of environmental, social and governance characteristics and/or performance; domain name systems development, namely development of computer hardware and software; technical IT services comprising the administration, registration, assignment and management of computer network information, network addresses, demographic information of network addresses and domain names; advisory, information and consulting services relating to the aforementioned services |

| INTERNATIONAL CLASS | 045 |
|---|---|
| DESCRIPTION TEXT | Domain name services, namely creation and maintenance of a register of domain names; registration of domain names; policy development related to domain name registration and maintenance; administration, registration, assignment and management of computer network information, network addresses, demographic information of network addresses and domain names, all being in the nature of legal services; provision of information and data related to domain name registrations; advisory, information and consulting services relating to the aforementioned services |

## GOODS AND SERVICES CLASSIFICATION

| INTERNATIONAL | 038 | FIRST USE | NONE | FIRST USE | NONE | CLASS | 6-ACTIVE |
|---|---|---|---|---|---|---|---|

| CLASS | | DATE | | IN COMMERCE DATE | | STATUS | |
|---|---|---|---|---|---|---|---|
| INTERNATIONAL CLASS | 042 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |
| INTERNATIONAL CLASS | 045 | FIRST USE DATE | NONE | FIRST USE IN COMMERCE DATE | NONE | CLASS STATUS | 6-ACTIVE |

## MISCELLANEOUS INFORMATION/STATEMENTS

| CHANGE IN REGISTRATION | NO |
|---|---|

## FOREIGN INFORMATION

| PRIORITY CLAIMED | SEC. 44(D) ON Canada |
|---|---|
| APPLICATION NO. | 1398122 |
| APPLICATION FILING DATE | 06/04/2008 |
| FOREIGN REG NO. | N/A |
| FOREIGN REG DATE | N/A |
| FOREIGN RNWL NUM | N/A |
| DATE OF FOREIGN RNWL | N/A |
| FOREIGN EXPIRATION | N/A |
| FOREIGN RNWL EXPIRATION | N/A |
| PRIORITY CLAIMED | SEC. 44(D) ON Canada |
| APPLICATION NO. | 1398122 |
| APPLICATION FILING DATE | 06/04/2008 |
| FOREIGN REG NO. | N/A |
| FOREIGN REG DATE | N/A |
| FOREIGN RNWL NUM | N/A |
| DATE OF FOREIGN RNWL | N/A |
| FOREIGN EXPIRATION | N/A |
| FOREIGN RNWL EXPIRATION | N/A |
| PRIORITY CLAIMED | SEC. 44(D) ON Canada |
| APPLICATION NO. | 1398122 |
| APPLICATION FILING DATE | 06/04/2008 |
| FOREIGN REG NO. | N/A |
| FOREIGN REG DATE | N/A |

| FOREIGN RNWL NUM | N/A |
|---|---|
| DATE OF FOREIGN RNWL | N/A |
| FOREIGN EXPIRATION | N/A |
| FOREIGN RNWL EXPIRATION | N/A |

## PROSECUTION HISTORY

| DATE | ENT CD | ENT TYPE | DESCRIPTION | ENT NUM |
|---|---|---|---|---|
| 04/03/2009 | TEME | I | TEAS/EMAIL CORRESPONDENCE ENTERED | 009 |
| 04/03/2009 | CRFA | I | CORRESPONDENCE RECEIVED IN LAW OFFICE | 008 |
| 04/02/2009 | ALIE | A | ASSIGNED TO LIE | 007 |
| 04/02/2009 | TROA | I | TEAS RESPONSE TO OFFICE ACTION RECEIVED | 006 |
| 10/28/2008 | GNRN | O | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 005 |
| 10/28/2008 | GNRT | F | NON-FINAL ACTION E-MAILED | 004 |
| 10/28/2008 | CNRT | R | NON-FINAL ACTION WRITTEN | 003 |
| 10/22/2008 | DOCK | D | ASSIGNED TO EXAMINER | 002 |
| 07/18/2008 | NWAP | I | NEW APPLICATION ENTERED IN TRAM | 001 |

## CURRENT CORRESPONDENCE INFORMATION

| ATTORNEY | Susan Brushaber |
|---|---|
| CORRESPONDENCE ADDRESS | SUSAN BRUSHABER<br>SCHUCHAT, HERZOG & BRENMAN, LLC<br>1900 WAZEE ST STE 300<br>DENVER, CO 80202-1259 |
| DOMESTIC REPRESENTATIVE | NONE |

.ECO

**EXHIBIT E**

| | |
|---|---|
| **To:** | Big Room, Inc. ([sbrushaber@shblegal.com](mailto:sbrushaber@shblegal.com)) |
| **Subject:** | TRADEMARK APPLICATION NO. 77523010 - DOT ECO - N/A |
| **Sent:** | 10/28/2008 5:44:03 PM |
| **Sent As:** | ECOM103@USPTO.GOV |
| **Attachments:** | Attachment - 1<br>Attachment - 2 |

# UNITED STATES PATENT AND TRADEMARK OFFICE

**SERIAL NO**:     77/523010

**MARK**: DOT ECO

# *77523010*

**CORRESPONDENT ADDRESS**:
SUSAN BRUSHABER
SCHUCHAT, HERZOG & BRENMAN, LLC
1900 WAZEE ST STE 300
DENVER, CO 80202-1259

**RESPOND TO THIS ACTION:**
**http://www.uspto.gov/teas/eTEASpageD.htm**

**GENERAL TRADEMARK INFORMATION:**
**http://www.uspto.gov/main/trademarks.htm**

**APPLICANT**:     Big Room, Inc.

**CORRESPONDENT'S REFERENCE/DOCKET NO**:
N/A

**CORRESPONDENT E-MAIL ADDRESS**:
sbrushaber@shblegal.com

# OFFICE ACTION

TO AVOID ABANDONMENT, THE OFFICE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF THE ISSUE/MAILING DATE.

**ISSUE/MAILING DATE**: **10/28/2008**

The referenced application has been reviewed by the assigned trademark examining attorney.  Applicant must respond timely and completely to the issue(s) below.  15 U.S.C. §1062(b); 37 C.F.R. §§2.62, 2.65(a); TMEP §§711, 718.03.

**Trademark Act Section 2(d) Search Results – Prior Pending Application**

The Office records have been searched and no similar *registered* mark has been found that would bar

registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d).  TMEP §704.02.  However, please be advised that a potentially conflicting mark in a prior-filed pending application may present a bar to registration.

Information regarding pending Application Serial No. 77452991 is enclosed.  The filing date of the referenced application precedes applicant's filing date.   There may be a likelihood of confusion between the two marks under Trademark Act Section 2(d), 15 U.S.C. §1052(d).  If the referenced application registers, registration may be refused in this case under Section 2(d).  37 C.F.R. §2.83; TMEP §§1208 *et seq*.  Therefore, upon entry of a response to this Office action, action on this case may be suspended pending final disposition of the earlier-filed application.

If applicant believes there is no potential conflict between this application and the earlier-filed application, then applicant may present arguments relevant to the issue in a response to this Office action.  The election not to submit arguments at this time in no way limits applicant's right to address this issue at a later point.

However, applicant must address the following procedural issues *at this time*:

## Amended Identification of Services Required

Applicant has applied to register the mark DOT ECO for services in Class 035.  Some of the wording in the identification of services is indefinite and/or broad and may comprise services in several international classes.

In the identification of services, applicant must use the common commercial or generic names for the services, be as complete and specific as possible, and avoid the use of indefinite words and phrases.  If applicant uses indefinite words and phrases such as "services in connection with," "such as," "including," "and like services," "systems," "products," "concepts," or "not limited to," such wording must be followed by "namely," and a list of the specific services identified by their common commercial or generic names.  *See* TMEP §§1402.01, 1402.03(a).

Applicant must address the following issues and amend the identification of services accordingly.  Suggestions and explanations are incorporated into the proposed wording below.  Applicant may adopt the following wording, if accurate:

- "Internet  services, **namely, _____** *{list specific services, using common commercial names, in Class 035, e.g., Internet advertising services}*; domain name services, **namely, _____** *{further specify the nature of the services, using common commercial names, in Class 035}* **[Please note that the registration of domain names is a legal service classified in Class 045]**; **proving an online** global **commercial** information directory **in the field of _____** *{indicate field of use, e.g., medical doctors}*; administration **services, namely, _____** *{list specific services, using common commercial names, in Class 035, e.g., business administration services}*, registration **services, namely, _____** *{list specific services, using common commercial names, in Class 035, e.g., credit card registration}*, assignment **services, namely, _____** *{list specific services, using common commercial names, in Class 035}*; **computerized database management** of computer network information, network addresses, demographic information of network addresses, **and** domain names; educational **services, namely, _____** *{list specific services, using common commercial names, in Class 035}* **[Please note, most education services are classified in Class 041]**, advisory, information and consulting services relating to the aforementioned services" in International Class 035.

- "Education services, **namely, _____** *{list specific services, using common commercial names and, if relevant, the field of use, e.g., providing training seminars in the field of domain name services}* all related to domain name and global information and directory services" in International Class 041.

- "Domain name services, namely, **registration of domain names for identification of users on a global computer network**" in International Class 045.

If applicant adopts the suggested amendment of the identification of goods and/or services, then applicant must amend the classification to International Classes 035, 041, and 045 and pay all corresponding fees. *See* 37 C.F.R. §§2.32(a)(7), 2.85; TMEP §§805, 1401.

For assistance with identifying and classifying goods and/or services in trademark applications, please see the online searchable *Manual of Acceptable Identifications of Goods and Services* at http://tess2.uspto.gov/netahtml/tidm.html.  *See* TMEP §1402.04.

Identifications of goods and/or services can be amended only to clarify or limit the goods and/or services; adding to or broadening the scope of the goods and/or services is not permitted.  37 C.F.R. §2.71(a); *see* TMEP §§1402.06 *et seq.*, 1402.07.  Therefore, applicant may not amend the identification to include goods and/or services that are not within the scope of the goods and/or services set forth in the present identification.

Applicant has paid for services in ONE international class.  If applicant wishes to add an additional class that is within the scope of the current identification of goods/services, please see the section entitled "Multiple Class Requirements" listed below.

## **Multiple Class Requirements**

If applicant prosecutes this application as a combined, or multiple-class application, then applicant must comply with each of the following for those goods and/or services based on an intent to use the mark in commerce under Trademark Act Section 1(b):

    (1)    Applicant must list the goods and/or services by international class; and

    (2)    Applicant must submit a filing fee for each international class of goods and/or services not covered by the fee already paid (current fee information should be confirmed at http://www.uspto.gov).

*See* 37 C.F.R. §§2.34(a)(2)-(3), 2.86(a); TMEP §§1403.01, 1403.02(c).

The filing fee for adding classes to an application is as follows:

    (1)    $325 per class, when the fees are submitted with a response filed online via the Trademark Electronic Application System (TEAS) at http://www.uspto.gov/teas/index.html; or

    (2)    $375 per class, when the fees are submitted with a paper response.

37 C.F.R. §2.6(a)(1)(i)-(a)(1)(ii); TMEP §810.

**Filing Basis Inquiry – Trademark Act Sections 1(b) and 44(d)**

The application specifies both an intent to use basis under Trademark Act Section 1(b) and a claim of priority under Section 44(d) based on a foreign application. *See* 15 U.S.C. §§1051(b), 1126(d); 37 C.F.R. §2.34(a)(2), (a)(4). However, the application does not include a foreign registration certificate or a statement indicating whether applicant intends to rely upon the resulting foreign registration under Section 44(e) as an additional basis for registration. *See* 15 U.S.C. §1126(e).

Although Section 44(d) provides a basis for filing and a priority filing date, it does not provide a basis for publication or registration. 37 C.F.R. §2.34(a)(4)(iii); TMEP §§1002.02, 1003.03. It is unclear whether applicant intends to rely on Section 44(e) as an additional basis for registration.

Therefore, applicant must clarify the basis in the application by satisfying one of the following:

> (1)    If applicant intends to rely on Section 44(e), in addition to Section 1(b), as a basis for registration, applicant must provide a written statement to that effect. In addition, (i) applicant's country of origin must either be a party to a convention or treaty relating to trademarks to which the United States is also a party, or must extend reciprocal registration rights to nationals of the United States by law; and (ii) applicant must submit a true copy, photocopy, certification or certified copy of the foreign registration from applicant's country of origin. *See* 15 U.S.C. §1126(b)-(c), (e); 37 C.F.R. §2.34(a)(3)(ii); TMEP §§806.02(f), 1002.01, 1004. A copy of the foreign registration must be a copy of a document that issued to the applicant by or was certified by the intellectual property office in the applicant's country of origin. TMEP §1004.01. If the foreign registration is not written in English, then applicant must provide an English translation. 37 C.F.R. §2.34(a)(3)(ii). The translation should be signed by the translator. TMEP §1004.01(b). If the foreign registration has not yet issued, or applicant requires additional time to procure a copy of the foreign registration (and English translation, as appropriate), applicant must respond to this Office action requesting suspension pending receipt of the foreign registration documentation. TMEP §1003.04.; or

> (2)    If applicant intends to rely solely on an intent to use basis under Section 1(b), while retaining its Section 44(d) priority filing date, applicant must submit a written statement that it does not intend to rely on Section 44(e) as a basis for registration and request that the mark be approved for publication based solely on the Section 1(b) basis. *See* TMEP §§806.02(f), 806.04(b), 1003.04. Although the mark may be approved for publication on the Section 1(b) basis, it will not register until an acceptable allegation of use has been filed. *See* 15 U.S.C. §1051(c)-(d); 37 C.F.R. §§2.76, 2.88; TMEP §§1103, 1104.

**Response Guidelines**

If applicant has questions about its application or needs assistance in responding to this Office action, please telephone the assigned trademark examining attorney directly at the number below.

/Laurie R. Kaufman/
Trademark Examining Attorney
Law Office 103
Phone: 571.272.8913

Fax: 571.273.8913

**RESPOND TO THIS ACTION:** Applicant should file a response to this Office action online using the form at http://www.uspto.gov/teas/eTEASpageD.htm, waiting 48-72 hours if applicant received notification of the Office action via e-mail.  For *technical* assistance with the form, please e-mail TEAS@uspto.gov.  For questions about the Office action itself, please contact the assigned examining attorney.  **Do not respond to this Office action by e-mail; the USPTO does not accept e-mailed responses**.

If responding by paper mail, please include the following information: the application serial number, the mark, the filing date and the name, title/position, telephone number and e-mail address of the person signing the response.  Please use the following address: Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451.

**STATUS CHECK:** Check the status of the application at least once every six months from the initial filing date using the USPTO Trademark Applications and Registrations Retrieval (TARR) online system at http://tarr.uspto.gov.  When conducting an online status check, print and maintain a copy of the complete TARR screen.  If the status of your application has not changed for more than six months, please contact the assigned examining attorney.

**Print: Oct 28, 2008**                          **77452991**                          **Issue: Dec 2, 2008**

## DESIGN MARK

**Serial Number**
77452991

**Status**
PUBLISHED FOR OPPOSITION

**Word Mark**
.ECO

**Standard Character Mark**
Yes

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(4) STANDARD CHARACTER MARK

**Owner**
Colored Planet Connextion DBA Colored Planet CORPORATION CONNECTICUT
40 Stimson RD New Haven CONNECTICUT 06511

**Goods/Services**
Class Status -- ACTIVE.  IC 042.  US  100 101.  G & S: Design,
creation, hosting and maintenance of internet sites for third parties;
Hosting of digital content on the Internet; Providing specific
information as requested by customers via the Internet.

**Filing Date**
2008/04/20

**Examining Attorney**
BENMAMAN, ALICE

-1-

.eco

| To: | Big Room, Inc. (sbrushaber@shblegal.com) |
|---|---|
| Subject: | TRADEMARK APPLICATION NO. 77523010 - DOT ECO - N/A |
| Sent: | 10/28/2008 5:44:04 PM |
| Sent As: | ECOM103@USPTO.GOV |
| Attachments: | |

# IMPORTANT NOTICE
## USPTO OFFICE ACTION HAS ISSUED ON 10/28/2008 FOR APPLICATION SERIAL NO. 77523010

Please follow the instructions below to continue the prosecution of your application:

**VIEW OFFICE ACTION:** Click on this link **http://tmportal.uspto.gov/external/portal/tow?DDA=Y&serial_number=77523010&doc_type=OOA&** (or copy and paste this URL into the address field of your browser), or visit **http://tmportal.uspto.gov/external/portal/tow** and enter the application serial number to **access** the Office action.

**PLEASE NOTE**: The Office action may not be immediately available but will be viewable within 24 hours of this notification.

**RESPONSE MAY BE REQUIRED:** You should carefully review the Office action to determine (1) if a response is required; (2) how to respond; and (3) the applicable **response time period**. Your response deadline will be calculated from 10/28/2008.

**Do NOT hit "Reply" to this e-mail notification, or otherwise attempt to e-mail your response, as the USPTO does NOT accept e-mailed responses. Instead, the USPTO recommends that you respond online using the Trademark Electronic Application System response form at http://www.uspto.gov/teas/eTEASpageD.htm.**

**HELP:** For *technical* assistance in accessing the Office action, please e-mail **TDR@uspto.gov**. Please contact the assigned examining attorney with questions about the Office action.

# WARNING
## 1. The USPTO will NOT send a separate e-mail with the Office action attached.

## 2. Failure to file any required response by the applicable deadline will result in the ABANDONMENT of your application.

**EXHIBIT F**



January 11, 2012

Mr. Jacob Malthouse
Mr. Trevor Bowden
Big Room Inc.
332 - 237 Keefer Street
Vancouver, B.C.  V6A 1X6
CANADA

Re:      Infringement of .ECO trademark.

Dear Sirs,

My firm represents Planet .ECO LLC.  Two of the principals in that entity, Moses Boone and Jean William, recently have had discussions with you regarding their .ECO business and trademark rights, and their plans to apply to ICANN to own and operate the .ECO gTLD registry.  Mr. Boone previously has had discussions with Big Room regarding these same issues, resulting in Mr. Boone's request for Big Room to cease and desist from further efforts towards an ICANN application for the .ECO TLD.  That notice was provided XXDATEXX.  Therefore, my clients are alarmed that not only has Big Room essentially ignored that notice, but also the recent discussions still have led only to Big Room's offer to license my client's trademark rights perpetually, for the paltry sum of $15,000.

As you know, my client has established an ongoing business in the United States since 2008, using the .ECO mark in commerce as stated in U.S. Principal Registration No. 3716170.  That business is intended to include domain registration activities.  Big Room's continuing intention to operate a .ECO TLD in the United States is therefore a clear and present threat to my client's business plans and trademark rights.  In hopes of avoiding a more substantial legal conflict, my client may be interested in more substantial business discussions with Big Room.  Regardless, my client intends to carry forward with its business plans, and to enforce its trademark rights pursuant to U.S. law.  My client reserves all rights with respect to this matter, and Big Room is hereby notified of its duty to preserve all evidence pertaining to its discussions with my client, pertaining to Big Room's intentions to operate a .ECO TLD, pertaining to any .ECO trademark issue whatsoever, and otherwise potentially pertaining to this matter in the event it proceeds to litigation.

We certainly hope to avoid that, but my client remains dismayed by Big Room's pattern of disrespectful behavior with respect to my client's prior rights in commerce.  Therefore, we must respectfully request that Big Room and any affiliates, directors, officers, employees or others acting in concert with Big Room, immediately cease and desist from any new activities in furtherance of Big Room's stated intention to apply to ICANN to



operate a .ECO TLD, or any confusingly similar TLD.  Big Room seemingly has ignored a similar notice from my client provided November 9, 2009.  Therefore, Big Room's activities since then and in the future may be deemed willful infringement of my client's trademark and other legal rights.  Such a finding could lead to at least the following remedies from a U.S. court:  the imposition of an injunction preventing any future infringement, a substantial damages award, and an award of my client's attorneys' fees and costs.

Please let me know if you have any questions.  Otherwise we request your assurances no later than January 16, 2011, that Big Room will comply with this demand.

Sincerely,

*Mike Rodenbaugh*
California State Bar No. 179059

**EXHIBIT G**



Rodenbaugh
LAW

January 11, 2012

Mr. Fred Krueger
Doteco LLC
3100 Donald Douglas Loop N., Hangar 7
Santa Monica, CA  90405

Re:      Infringement of .ECO trademark.

Dear Fred,

My firm represents Planet .ECO LLC.  One of the principals in that entity, Moses Boone, has previously corresponded with you regarding his .ECO business and trademark rights, and his team's plans to apply to ICANN to own and operate the .ECO gTLD registry.  Those discussions resulted in Mr. Boone 's request for Doteco to cease and desist from further efforts towards an ICANN application for the .ECO TLD.  That notice was provided November 9, 2009.  Therefore, my clients are alarmed that not only has Doteco essentially ignored that notice, but also petitioned to cancel my client's trademark registration in January, 2010, without any basis in fact or law for such petition.  As you know, that petition was dismissed this week by the Trademark Trial & Appeal Board, for your failure to prosecute the baseless claims stated in the petition.

As you know, my client has established an ongoing business in the United States since 2008, using the .ECO mark in commerce as stated in U.S. Principal Registration No. 3716170.  That business is intended to include domain registration activities.  If Doteco LLC continues to intend to operate a .ECO TLD in the United States, this would constitute a clear and present threat to my client's business plans and trademark rights.  My client intends to carry forward with its business plans, and to enforce its trademark rights.  My client reserves all rights with respect to this matter, and Doteco LLC is hereby notified of its duty to preserve all evidence pertaining to its discussions with my client, pertaining to Doteco LLC's or any affiliate's intentions to operate a .ECO TLD, pertaining to any .ECO trademark issue whatsoever, and otherwise potentially pertaining to this matter in the event it proceeds to litigation.

We certainly hope to avoid that, but my client remains dismayed by Doteco's pattern of disrespectful behavior with respect to my client's trademark rights.  Therefore, we must respectfully request that Doteco LLC and any affiliates, directors, officers, employees or others acting in concert with Doteco LLC, immediately cease and desist from any new activities in furtherance of Doteco LLC's stated intention to apply to ICANN to operate a .ECO TLD, or any confusingly similar TLD.  Doteco LLC has ignored a similar notice from my client provided November 9, 2009 and has exacerbated the situation via its baseless TTAB petition to cancel.  Therefore, Doteco LLC's activities since then and in the future may be deemed willful infringement of my client's trademark and other legal



rights.  Such a finding could lead to at least the following remedies from a U.S. court:  the imposition of an injunction preventing any future infringement, a substantial damages award, and an award of my client's attorneys' fees and costs.

Please let me know if you have any questions.  Otherwise we request your assurances no later than January 16, 2011, that Doteco LLC will comply with this demand.

Sincerely,

*Mike Rodenbaugh*
California Bar No. 179059