VENABLE LLP
Tamany Vinson Bentz (SBN 258600)
Deborah A. Feinblum (SBN 251544)
Email:    tjbentz@venable.com
          dafeinblum@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:  (310) 229-9900
Facsimile:   (310) 229-9901

VENABLE LLP
Janet F. Satterthwaite (pro hac)
Jeffrey A. Dunn (pro hac)
Meaghan H. Kent (pro hac)
Email:    jadunn@venable.com
          jfsatterthwaite@venable.com
          mhkent@venable.com
575 7th Street NW
Washington DC 20004
Telephone:  (202) 344-4000
Facsimile:   (202) 344-8300

Attorneys for ALL DEFENDANTS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Planet .Eco LLC | CASE NO. CV 12-1812-PA(PCAx) |
| Plaintiff, | Hon. Percy Anderson |
| v. | **MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)** |
| Big Room, Inc., Doteco LLC, Top Level Domain Holdings Limited, Minds and Machines, LLC, and Frederick R. Krueger | |
| Defendant, | Hearing Date:  November 19, 2012<br>Time:  1:30 p.m.<br>Courtroom:  15 |
| v. | Action Filed:  March 2, 2012 |
| Moses Boone, an individual | |
| Counterclaim Defendant, | |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

TO PLAINTIFF AND ITS ATTORNEY OF RECORD:

NOTICE IS HEREBY GIVEN that on November 19, 2012 at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 312 North Sprint Street, Los Angeles, CA, Defendants Top Level Domain Holdings Limited ("TLDH"), Minds and Machines, LLC, Doteco LLC, and Frederick R. Krueger will and hereby do move the Court to dismiss Plaintiff Planet.Eco LLC's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that the Court lacks subject matter jurisdiction.

The Court does not have subject matter jurisdiction over Plaintiff's conjectural claims under Article III of the Constitution or under the Lanham Act. Defendants thus move to dismiss.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, and the declarations of Janet Satterthwaite, Antony Van Couvering and Sarah Hendon.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which occurred on October 11, 2012.

DATED: October 16, 2012                    VENABLE LLP


By: /s/Tamany Vinson Bentz

JANET SATTERTHWAITE
JEFFREY A. DUNN
TAMANY VINSON BENTZ
MEAGHAN H. KENT
DEBORAH A. FEINBLUM
Attorneys for All Defendants

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................1

BACKGROUND ............................................................................................2

    The Domain Name System (DNS) ...........................................................2

    ICANN's Management of the DNS ..........................................................3

    The New gTLD Program ...........................................................................3

    Plaintiff's Requested Relief and Its Global Impact .................................4

ANALYSIS.....................................................................................................5

    A.    The Court Lacks Subject Matter Jurisdiction under Article III of the Constitution over Plaintiff's Claim For Injunction of the .eco Registry Against Defendants. ...................................................5

    B.    The Court Does Not Have Subject Matter Jurisdiction over the Lanham Act Claims Surrounding Global Activities. ..............................8

        1.    First, the Effect on American Commerce is Minimal.................9

        2.    Second, the Complained-Of Activity is not Sufficiently Great to Present a Cognizable Injury to Plaintiff Under the Federal Statute. .......................................................10

            i.    The "harm" alleged by Plaintiff is prospective and speculative.....................................................10

            ii.    Plaintiff has an Adequate Alternative Remedy..............11

            iii.    Plaintiff's Claims are too Weak To Support a Cognizable threat to U.S .Commerce. ...........................11

                a.    Plaintiff's trademark registration is vulnerable to cancellation on at least three grounds.................................................12

                b.    There is no Likelihood of Confusion. ................12

        3.    Third, the Interests of and Links to American Foreign Commerce are not Sufficiently Strong in Relation to Those of Other Nations to Justify an Assertion of Extraterritorial Authority. ...............................................................13

            i.    An Exercise Of Subject Matter Jurisdiction Would Conflict With Both U.S. And Foreign Law and Policy. ..............................................................14

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

i

a.  U.S. Policy Supports Delegation of gTLD management to ICANN. ..................................14

b.  ICANN and the International Community Established the New gTLD Program, Including a Robust Dispute Resolution Policy. ..................................................16

c.  ICANN Has an Established Process to Resolve Plaintiff's Concern. ..............17

d.  Interference with Foreign Trademark Rights Conflicts with Foreign Law. ..............18

e.  WIPO is the Appropriate Authority to Evaluate Competing International Intellectual Property. ..........................19

f.  A U.S. Court's Intervention Would Cause Conflict with WIPO's Established Policy. ..........20

g.  The U.S. Government Opposes External Intervention in the new gTLD Program. ..............20

h.  Intervention By a U.S. Court Would Encourage Other Nations to Similarly Improperly Intervene. ..........................21

ii.  The Nationality or Allegiance of the Parties and the Locations or Principal Places of Business of Corporations Do Not Support Subject Matter Jurisdiction. ..................................................22

iii.  The Extent to Which Enforcement by Either State can be Expected to Achieve Compliance does not Support Subject Matter Jurisdiction. ..............................22

iv.  The Relative Significance of Effects on the U.S. as Compared with those Elsewhere does not Support Subject Matter Jurisdiction. ..............................23

v.  The Extent to Which there is Explicit Purpose to Harm or Affect American Commerce does not Support Subject Matter Jurisdiction. ..............................24

vi.  The Foreseeability of Such Effect does not Support Subject Matter Jurisdiction. ..............................25

vii.  The Relative Importance to the Violations Charged of Conduct within the U.S. as Compared with Conduct Abroad does not Support Subject Matter Jurisdiction. ..................................................25

CONCLUSION. ..................................................25

ii

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

# TABLE OF AUTHORITIES

**Page**

**Cases**

*All One God Faith, Inc. v. Hain Celestial Group, Inc.*  2009 WL 4907433, 5 (N.D.Cal.)
(N.D.Cal. 2009)..................................................................................................6

*AMF Inc. v. Sleekcraft Boats*, 599 F. 2d 341, 348-49 (9th Cir. 1979)........................................13

*Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, *5 (N.D.Cal. 2012) ...........................6

*Cetacean Community v. Bush*, 386 F. 3d 1169, 1174 (9th Cir. 2004) .........................................6

*Gallup, Inc. v. Business Research Bureau (Pvt.) Ltd.*, 688 F.Supp.2d 915, 923 (N.D.Cal.
2010) ..........................................................................................10, 18, 23, 25

*Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 511 F.Supp. 486, 496 (D.C.N.Y.
1981) ..........................................................................................11, 23, 24

*St. Clair v. City of Chico*, 880 F. 2d 199, 201 (9th Cir. 1989)..................................................6

*Star-Kist Foods, Inc. v. PJ Rhodes & Co.*, 769 F. 2d 1393, 1395 (9th Cir. 1995) ...........9, 14, 18

*Timberlane Lumber Co. v. Bank of America National Trust & Savings Ass'n*, 549 F.2d
597, 613-15 (9th Cir. 1976) ...........................................................................9, 14

*Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643 (2d Cir. 1956) ...............................18

*Vizer v.Vizernews.com*, 2012 WL 2367130, *2 (D.D.C.)...........................................................3

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F. 2d 406, 428 (9th Cir. 1977) ...........8, 14, 18

*White v. Lee*, 227 F. 3d 1214, 1242 (9th Cir. 2000)................................................................6

**Statutes**

15 U.S.C. § 1015..............................................................................................................12

15 U.S.C. § 1125................................................................................................................8

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................6

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

## INTRODUCTION

This case involves two companies who are, along with two other entities, applicants for the .eco top level domain name registry to be awarded by the authorized international domain name administrator, ICANN.  Plaintiff alleges *prospective conjectural* infringement based on Defendant TLDH's application to ICANN to serve as the registry for the .eco top level domain, and requests that Defendants be enjoined from "rendering domain registry services" related to the .eco top level domain.

The Court does not have subject matter jurisdiction over Plaintiff's conjectural claims related to the .eco registry, first under Article III of the Constitution, and second, under extraterritorial application of the Lanham Act. Defendants thus move to dismiss the relief requested related to that conjectural infringement.  Plaintiff's claims for conjectural relief are so intermingled with its other claims and requested relief that Defendants seek to have the entire Complaint dismissed. This Court is not the right place for this dispute; Defendants are not the right target; and this is not the right time to decide this dispute.

First, ICANN may or may not award the .eco domain registry to Plaintiff, to Defendant TLDH, or to another applicant.  Until such an award is made, if ever, there is simply no harm or case to resolve.  Pursuant to Article III, there is no subject matter jurisdiction because Plaintiff's alleged injury is conjectural and hypothetical; the harm Plaintiff perceives is not traceable to Defendants; and the perceived injury will not be redressed by a favorable decision.

Second, Plaintiff is requesting injunctive relief that will have an impact on commerce outside the United States by unilaterally interfering with a worldwide process for allocation of new top-level domain registry contracts.  Pursuant to this Circuit's rule of reason test for extraterritorial application of the Lanham Act, this claim must be dismissed because it will interfere with international processes,

1    foreign law, and domestic policies.  If Plaintiff wishes to pursue a claim that it has

2    exclusive worldwide rights to the term .eco as a top level domain, that claim

3    should be taken up with ICANN.  Indeed, the ICANN tribunal has a dispute

4    resolution procedure aimed at just the sort of controversy alleged in Plaintiff's

5    complaint and the international community and the U.S. government have made

6    clear that ICANN is the appropriate body for resolving such disputes.

7    <u>**BACKGROUND**</u>

8    <u>**The Domain Name System (DNS)**</u>

9        Domain names are the portion of a website address that follows the "www,"

10   as in www.*amazon.com*.   (Declaration of Antony Van Couvering ("AVC Decl.")

11   at ¶10)  A domain name includes the top-level domain (TLD), also known as the

12   suffix at the end of a domain name – ".com" in the preceding example.  (AVC

13   Decl. ¶11)  Examples of current gTLDs include .com, .org, .info, .net.  (*Id.*)

14       A domain registry includes a database of all domain names registered in a

15   TLD and each TLD is run by a registry operator.  (AVC Decl. ¶12)  A registry

16   operator is the entity charged with managing the registry for the TLD, including

17   managing the registration of domain names within the TLD, controlling the

18   policies of domain name allocation, keeping the database of domain names, and

19   generating the files which convert domain names to IP addresses.  (AVC Decl.

20   ¶13)  It is critically important that each TLD be run by only one registry to ensure

21   that there is only one of each domain name.  (AVC Decl. ¶17)  International

22   commerce would be severely injured if there were two .com registries operating in

23   the world such that two parallel systems could sell the same domain name to two

24   separate entities; indeed, the internet would cease to function properly. (AVC Decl.

25   ¶18)  In recognition that there must be international exclusivity in the award of

26   TLDs, the Internet Corporation for Assigned Names and Numbers (ICANN) was

27   appointed to award such domain names through a defined and internationally

28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1   accepted process.  (AVC Decl. ¶19; see also section 3.i.a below)

2   **ICANN's Management of the DNS**

3   The U.S. government delegated the operation of DNS worldwide to ICANN.

4   ICANN "is a not-for-profit corporation formed in 1998 and selected by the U.S.

5   Department of Commerce to administer the internet domain name system, which

6   links user-friendly names, such as 'uscourts.gov,' to unique numeric addresses that

7   identify servers connected to the internet." *Vizer v. Vizernews.com*, 2012 WL

8   2367130, *2 (D.D.C.) (footnotes and citations omitted.)  As the *Vizer* court

9   explained, "ICANN administers the domain name system with input from a

10  Governmental Advisory Committee [GAC], in which the U.S. Department of

11  Commerce participates." *Id.* at *2.  Notably, GAC is an international body made

12  up of representatives from all governments, not just the U.S. government.  (AVC

13  Decl. ¶20; see also Section 3.i.a below.)  Thus, while ICANN is based in California,

14  its function is global and not restricted to U.S. commerce.

15  **The New gTLD Program**

16  In 2011, ICANN announced an important new phase in the DNS.  For many

17  years there had been only a handful of gTLDs; .com, .net, .org, .biz, and a small

18  number of specialized or restricted domains such as .gov, .mil, .mobi. (AVC Decl.

19  ¶¶23, 24)  In 2011, after years of preparation, debate, international conversations,

20  and input from many stakeholders, ICANN launched the new gTLD program to

21  increase competition and choice by introducing a potentially unlimited number of

22  new gTLDs into the Internet's addressing system.  (AVC Decl. ¶25; see also

23  sections 3.i.a and 3.i.b below; see also Declaration of Sarah C. Hendon ("SCH

24  Decl.") at ¶3, Ex. 1, Introduction by ICANN to list of applied-for gTLDs)  ICANN

25  began accepting applications for new gTLDs during a short window between

26  January and May, 2012.  (AVC Decl. ¶26; see also sections 3.i.a and 3.i.b below;

27  SCH Decl. at ¶3, Ex. 1)  Under the new ICANN process, for the first time ever,

28

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1   there would be an unrestricted opportunity for anyone to apply to serve as a

2   registry and develop and run a gTLD.  (AVC Decl. ¶27)  In developing the new

3   gTLD program, ICANN worked for a number of years on a Draft Applicant

4   Guidebook and solicited many rounds of public comments.  (AVC Decl. ¶28; see

5   also sections 3.i.a and 3.i.b below; see also First Amended Complaint, Dkt. 20,

6   ("FAC") at ¶¶ 41-45)

7   **Plaintiff's Requested Relief and Its Global Impact**

8       The Complaint, most notably the injunctive relief requested by Plaintiff,

9   makes clear that what Plaintiff actually seeks is to enjoin the international process

10  established by ICANN by which new gTLD registry operators will be chosen to

11  operate a .eco TLD.  Plaintiff seeks to do so by enjoining Defendants from

12  operating that TLD even though ICANN has not awarded the registry operations to

13  any entity and certainly has not awarded it to Defendants.  In its first prayer for

14  relief, Plaintiff Planet.Eco is asking that TLDH, and the other defendants, be

15  enjoined from "Registering, trafficking in, and using, in any manner, any .ECO

16  and/or confusingly similar trademarks and/or domain names, including in relation

17  to the rendering of domain registry services."  (FAC at 39:25-27)  No one knows

18  whether Defendants will have an opportunity to enter into an .eco registry

19  agreement with ICANN and Defendants certainly do not currently have and may

20  never have the right or ability to render domain name services related to .eco.

21  (AVC Decl. ¶¶31, 32)  The harm Plaintiff complains of is *potential future* harm

22  that *might* be caused by ICANN's award of a contract to *one* of the competing

23  applicants for the .eco TLD registry.  (*See* AVC Decl. ¶33)

24      The First Amended complaint similarly alleges that "[defendants] should be

25  permanently enjoined from further infringing Plaintiff's mark, including without

26  limitation by operating the '.eco' TLD *in the U.S.*, and preliminarily enjoined from

27  doing so if it appears at any time that delegation by ICANN to any of them is

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

4

imminent." (emphasis added)(FAC ¶47)  TLDH is a British Virgin Islands company with a headquarters in London, UK.  (FAC ¶6)  If TLDH is awarded the contract by ICANN to run the global .eco TLD registry, it will be operating that registry in Ireland, not the United States. (AVC Decl. ¶34)  Moreover, Plaintiff's request to limit such acts to "in the U.S" is absurd, because regardless of where TLDH has its operations, a global registry cannot be operated only in certain countries.  (AVC Decl. ¶35)  For example, ICANN is not able to require that applications for domain names be screened based on what country they come in from.  (*Id.*)  First, the registration process is generally automated. (*Id.*)  Second, ICANN prohibits registry operators from running registrar services, meaning the domain name registration must be sold to the public via a separate accredited registrar.  (*Id.*)  There are thousands of ICANN accredited registrars throughout the world, and the registry will not necessarily know where the end customer actually lives, since the purchase will likely come from one of those thousands of accredited registrars.  (AVC Decl. ¶36)  For example, person living in Los Angeles could go to Melbourne IT in Australia and purchase a .eco domain registration. (AVC Decl. ¶37)  Therefore, there is simply no way that a court could issue and enforce an injunction purportedly limited to the U.S. without affecting international commerce.  Nor, as noted above, could the Internet function properly if there were parallel operators of a TLD, such as two .com registries or two .eco registries, so it is impossible for anyone to run .eco "in" the U.S. if TLDH is entitled to run it in the rest of the world.

## ANALYSIS

### A. The Court Lacks Subject Matter Jurisdiction under Article III of the Constitution.

"Whether a claim is ripe for adjudication goes to a court's subject matter

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

jurisdiction under the case or controversy clause of article III of the federal Constitution" and is properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Standing involves two distinct inquiries. First, an Article III federal court must ask whether a plaintiff has suffered sufficient injury to satisfy the 'case or controversy' requirement of Article III. To satisfy Article III, a plaintiff 'must show that (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004); *see also Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at *5 (N.D. Cal. 2012). "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *Cetacean*, 386 F.3d at 1174. "In that event, the suit should be dismissed under Rule 12(b)(1)." *Id.* "When a plaintiff seeks prospective relief, in order to establish standing, he or she must show that there is 'a likelihood of future injury.'" *Castagnola*, 2012 WL 2159385, at *5.

"A Rule 12(b)(1) jurisdictional attack may be facial or factual. With a factual Rule 12(b)(1) attack, a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment. It need not presume the truthfulness of the plaintiff's allegations." *All One God Faith, Inc. v. Hain Celestial Group, Inc.*, 2009 WL 4907433, at *5 (N.D. Cal. 2009) (internal citations omitted). For example, the Court may review records on U.S. government policy towards ICANN.

The Court lacks subject matter jurisdiction under Article III over the request

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

to enjoin Defendants from using .eco in connection with a gTLD registry.  Though Defendant TLDH is one of several entities that have applied to ICANN to serve as the registry for the .eco TLD, ICANN has not awarded the contract, and it is wholly conjectural that TLDH will ever be awarded the .eco registry contract. There are four competing applications before ICANN for the .eco TLD: (1) Plaintiff Planet.Eco LLC, (2) Defendant TLDH, (3) former Defendant Big Room Inc., which was dismissed from this lawsuit for lack of personal jurisdiction (Dkt. 62), and (4) Little Birch, LLC, which is based outside this judicial district in Bellevue, Washington, has not been named as a party to this lawsuit, and is probably not amenable to personal jurisdiction.  (See SCH Decl. at ¶3, Ex. 1, at p. 22; see also SCH Decl. at ¶4, Ex. 2, Little Birch Application details.)  There is no way to know which, if any, of these entities may be awarded the .eco registry contract by ICANN.  As such, Defendant TLDH has not started operating the .eco registry and *might never operate the .eco registry*.  That there is no existing actual injury is further evidenced by Plaintiff's complaint that repeatedly asserts that Defendant "intends" or "seeks" to take certain actions, and not that Defendant has taken any actions.  *See inter alia*, "Defendants *seek* to operate the .eco TLD" (FAC at p. 10); "*seek* to operate" (FAC at ¶47); "*if … any of them were* to be delegated the .eco TLD to operate as a registry, they would do so in a manner that inevitably infringes on Plaintiff's rights" (FAC at ¶47); "*intends* to operate" (FAC at ¶86); "TLDH *intends…*" (FAC at ¶106); "Minds + Machines continues to *seek* to progress" (FAC at ¶115).

As to the remaining three Defendants other than TLDH – Minds & Machines, Doteco LLC, and Fred Krueger – they have not applied to run a gTLD under .eco, and the application window is now closed.  (See SCH Decl. at ¶3, Ex. 1, at p. 22.)  With respect to these Defendants, the request to enjoin them from engaging in the .eco registry activity is entirely improper since they cannot be

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   awarded that registry without having applied.

2      Applying the relevant factors articulated for Article III standing, it is clear

3   there is no subject matter jurisdiction: (1) Plaintiff has not suffered an injury in fact

4   that is (a) concrete or particularized or (b) actual or imminent because any injury

5   Plaintiff could allege is completely conjectural or hypothetical; (2) any alleged

6   injury caused by a third party's ownership of the .eco gTLD is not fairly traceable

7   to the Defendants since Defendants have not been awarded the .eco registry and

8   may never be; and (3) it is speculative that the alleged injury will be redressed by a

9   favorable decision since there are at least two other entities who may be awarded

10  the .eco registry who are not parties to this lawsuit and over which the Court has no

11  jurisdiction; even if an injunction were entered against the Defendants, any of

12  those other entities could move forward with the .eco registry.  Furthermore, since

13  Defendants hacw not taken any action that may harm Plaintiff and may *never* take

14  any such action, Plaintiff lacks standing under the Lanham Act.  *See* 15 U.S.C.

15  §1125(a) (requiring that a plaintiff must believe they are "likely to be damaged" by

16  any act of the asserted defendant).  Thus, under Article III of the Constitution and

17  the Lanham Act, this claim must be dismissed for lack of subject matter

18  jurisdiction.

19      B. **The Court Does Not Have Subject Matter Jurisdiction over the**

20      **Lanham Act Claims Surrounding Global Activities**.

21      The Court also lacks subject matter jurisdiction under the limits on

22  extraterritorial application of the Lanham Act.  In determining whether a court has

23  subject matter jurisdiction over a Lanham Act claim surrounding foreign activities,

24  the Ninth Circuit has articulated a multifactor test, where "each factor is just one

25  consideration to be balanced in the 'jurisdictional rule of reason' of comity and

26  fairness." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 428 (9th Cir.

27  1977).  "[F]irst, there must be some effect on American foreign commerce; second,

28

8

1  the effect must be sufficiently great to present a cognizable injury to plaintiffs

2  under the federal statute; and third, the interests of and links to American foreign

3  commerce must be sufficiently strong in relation to those of other nations to justify

4  an assertion of extraterritorial authority." *Star-Kist Foods, Inc. v. PJ Rhodes &*

5  *Co.*, 769 F.2d 1393, 1395 (9th Cir. 1995), citing *Timberlane Lumber Co. v. Bank of*

6  *America National Trust & Savings Ass'n*, 549 F.2d 597, 613-15 (9th Cir. 1976).

7       The Court does not have subject matter jurisdiction over the Lanham Act

8  claim surrounding the global .eco TLD registry or the international method by

9  which registry contract will be awarded.  The effect on American commerce is

10  comparatively minimal because the complained-of activity is not sufficiently great

11  to present a cognizable injury to Plaintiff under the Lanham Act.  In contrast,

12  collateral interference by a national court applying national law would be

13  inconsistent with the international structure of ICANN.  And, the interests and

14  links to U.S. foreign commerce are not sufficiently strong in relation to those of

15  other nations to justify an assertion of such extraterritorial authority.

16       **1.  The Effect on American Commerce is Minimal.**

17       First, there is minimal effect on U.S. commerce since the U.S. is only one of

18  hundreds of countries where residents can access the internet.  Registrations for

19  .eco that are sold to customers outside the U.S. or via accredited registrars outside

20  the U.S. will have minimal, if any, effect on U.S. commerce.  This is similar to

21  *Star-Kist Foods, Inc.*, where the Ninth Circuit held that the court did not have

22  subject matter jurisdiction over "adjudication of the right to use the trademarks in

23  Philippine commerce with nations other than the United States" in part because

24  "[t]he effect on United States commerce from the alleged illegal use of the

25  trademarks in trade between the Philippines and other foreign countries is

26  relatively insignificant compared to the effect on Philippine commerce."  769 F.2d

27  at 1396.  The Ninth Circuit affirmed the district court's dismissal of foreign

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

activities from the case, stating "the district court acted in accordance with principles of international comity and fairness in excluding wholly foreign commerce from the Lanham Act case before it." *Id.* In this case, it is impossible to segregate wholly foreign commerce from any alleged U.S. commerce, so the Court may not exercise jurisdiction.

### 2. The Complained-Of Activity is not Sufficiently Great to Present a Cognizable Injury to Plaintiff Under the Federal Statute.

Plaintiff's claims do not demonstrate cognizable injury under the Lanham Act because the alleged injury is speculative. Plaintiff has a more appropriate alternative remedy and Plaintiff's rights and alleged claim are too weak to support a cognizable injury.

### i. The "harm" alleged by Plaintiff is prospective and speculative.

Subject matter jurisdiction does not exist where "there is little evidence on the record to find that defendant's extraterritorial activities have inflicted or will inflict a cognizable injury upon plaintiff in the United States." *Gallup, Inc. v. Business Research Bureau (Pvt.) Ltd.*, 688 F.Supp.2d 915, 923 (N.D. Cal. 2010). In *Gallup*, plaintiff complained that the defendant conducted polls in Pakistan under the name Gallup Pakistan and released poll results on a website called Gallup Pakistan in Pakistan. *Id.* There, plaintiff presented evidence that out of "hundreds if not thousands of polls in Pakistan since 1980," "six polls conducted by defendant during a six-week period in 2008 surrounding the Pakistani parliamentary elections ... were published by eighteen news organizations in the United States bearing either the GALLUP or GALLUP PAKISTAN mark." *Id.* The court held that "[w]hile there is no question that plaintiff has put forth evidence that defendant's activities in releasing poll results on the Gallup Pakistan website have had 'some effect' on its trademark rights in the United States, there is little evidence on the record to find that defendant's extraterritorial activities have

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

1  inflicted or will inflict a cognizable injury upon plaintiff in the United States." *Id.*

2  Even more drastic, here, Plaintiff cannot show that Defendants "will" take

3  *any* action that will have *any* effect in the U.S.  As discussed above, Defendant

4  TLDH is one of four entities that applied to be the registry for .eco, and there is no

5  way to know which of these entities, if any, may be awarded the .eco registry

6  contract by ICANN.  As such, Defendant TLDH has not started using the .eco

7  registry and may never use the .eco registry.  Thus, Plaintiff cannot show that *any*

8  harm has caused by Defendant TLDH.  Any alleged harm to Plaintiff is speculative

9  at best, and is insufficient to meet this element of cognizable injury.  *See also*

10  *Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 511 F.Supp. 486, 496

11  (S.D.N.Y. 1981)(emphasis added)(Court refused to exercise subject matter

12  jurisdiction over the *planned* foreign publication of allegedly infringing magazine

13  for several reasons, including that "[i]ssuance of the requested injunction would

14  needlessly involve this Court in complex, and at this time *speculative*, foreign

15  activities.")(emphasis added).

16      **ii.**    **Plaintiff has an Adequate Alternative Remedy.**

17  The *Playboy* court also explained, "denial of the extraordinary relief sought

18  by plaintiff will not leave it vulnerable to foreign infringement; it can proceed

19  against Playmen in those states if and when defendants attempt to publish there."

20  *Id.* at 495.  Likewise, here, ICANN has established procedures, as discussed below,

21  by which to contest the gTLD award, and Plaintiff can proceed against Defendant

22  using that appropriate method.

23      **iii.**    **Plaintiff's Claims are too Weak To Support a Cognizable**

24          **threat to U.S .Commerce.**

25  Furthermore, here, Plaintiff's claims are too weak to show even prospective

26  harm.  Plaintiff is essentially a trademark troll, taking a weak registration and using

27  it to threaten or bully third parties to gain a business advantage even where there is

28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

no actual risk or threat to any business activity of Plaintiff.

a. Plaintiff's trademark registration is vulnerable to

cancellation on at least three grounds.

First, Plaintiff's registration is likely to be cancelled, as articulated in TLDH's Answer and Counterclaims. (*See* Answer and Amended Counterclaims ("AAC"), Dkt. 40, inter alia ¶¶7-22, 33-54, 63-69.) The registration is void *ab initio* because the applicant, Colored Planet Connection, did not even exist at the time that the application was filed. (15 U.S.C. Section 1015(a)(i); AAC at ¶¶ 33-39.) Moses Boone was aware of this but took no steps to correct it even though the Trademark Office sent him instructions on how to correct errors in the application. (Declaration of Janet F. Satterthwaite ("JFS Decl.") at ¶2, Ex A, Correspondence from Trademark Office.)  Second, Plaintiff does not own the registration.  Even if somehow this fatal error does not void the application *ab initio*, the signatories, as co-owners, were Moses Boone and Trevin Griffin.  (AAC at ¶¶ 40-50; SCH Decl. at ¶5, Ex. 3, Application for Trademark Registration.)  There is no evidence that Trevin Griffin assigned his rights to Moses Boone, so those rights in turn have not been assigned to Plaintiff.  (FAC, Ex. B)  Third, it appears that Plaintiff has no legitimate use of the trademark for the services covered in the application. (JFS Decl. at ¶¶3, 5, 7-11, Ex. B.)

b. There is no Likelihood of Confusion.

Even if these three distinct grounds for cancellation of the registration somehow fail, a trademark registration is not sufficient to sustain a cause of action for likelihood of confusion.  The plaintiff must demonstrate that there is a likelihood of confusion between Defendant's use of .eco and Plaintiff's rights, by applying several factors. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49

12

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

(9th Cir. 1979).[1]  Applying these factors, it is apparent that Plaintiff will have a weak case.  Plaintiff's rights are very weak; Plaintiff has apparently done virtually nothing to use or promote its .eco brand for web hosting and related services.  The services are different; even if there is a valid trademark and/or registration, it covers only web hosting services (FAC ¶¶18, 19) and/or "design, creation, hosting and maintenance of Internet sites for third parties; hosting of digital content on the Internet; providing specific information as requested by customers via the Internet," (FAC ¶32; Ex. 4) and *not* domain registry services.  Indeed, the USPTO policy is to refuse registration of trademarks for domain registry. (JFS Decl. at ¶13)  As such, both the consumers and the marketing channels are also different.  Furthermore, there is no evidence of actual confusion or that Defendant had any malintent when it applied to be the registry for the .eco TLD.

For all of these reasons, the complained-of activity is not sufficiently great to present a cognizable injury to Plaintiff under the federal statute.

**3.   The Interests of and Links to American Foreign Commerce do not Justify an Assertion of Extraterritorial Authority.**

The factors to be weighed when considering the third *Wells Fargo* element include "[1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to

---

[1] The factors to be considered in evaluating likelihood of confusion in the Ninth Circuit are: "1. strength of the mark; 2. proximity of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1   harm or affect American commerce, [6] the foreseeability of such effect, and [7]

2   the relative importance to the violations charged of conduct within the United

3   States as compared with conduct abroad." *Star-Kist Foods, Inc.*, 769 F.2d at 1395,

4   citing *Timberlane*, 549 F.2d at 614; *Wells Fargo,* 556 F.2d. at 428-429.  The *Wells*

5   *Fargo* court explained, "A court evaluating these factors should identify the

6   potential degree of conflict if American authority is asserted. A difference in law

7   or policy is one likely sore spot, though one which may not always be present.

8   Nationality is another; though foreign governments may have some concern for the

9   treatment of American citizens and businesses residing there, they primarily care

10   about their own nationals. Having assessed the conflict, the court should then

11   determine whether, in the face of it, the contacts and interests of the United States

12   are sufficient to support the exercise of extraterritorial jurisdiction." *Wells Fargo,*

13   556 F.2d. at 429, citing *Timberlane*, 549 F.2d at 614-615.

14   Here, to issue an injunction based on a U.S. trademark right which would

15   interfere with the operation of the gTLD process would not justify the assertion of

16   extraterritorial authority.

17   **i.    An Exercise Of Subject Matter Jurisdiction Conflicts With U.S.**

18   **And Foreign Law and Policy**.

19   The exercise of jurisdiction would go against U.S. and foreign policy.  U.S.

20   policy is to transfer enforcement of domain names to ICANN, and an exercise of

21   subject matter jurisdiction by a U.S. court over matters involving a domain name

22   registry, which is necessarily of international scope, will conflict with foreign law,

23   international agreements and policies, would violate established domestic policies

24   and goals, and would encourage international abandonment of the established

25   system.

26   a.    U.S. Policy Supports Delegation of gTLD management to

27   ICANN.

28

14

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

ICANN is a not-for-profit public benefit corporation that was organized under California law in 1998 in response to a policy statement issued by the U.S. Department of Commerce, in which the Department announced that the U.S. government would be willing to recognize, and enter into agreements with, a new, not-for-profit corporation established by the private sector to administer the domain name system. (SCH Decl. at ¶6, Ex. 4, ICANN Articles of Incorporation; SCH Decl. at ¶7, Ex. 5, "Department of Commerce: Relationship with the Internet Corporation for Assigned Names and Numbers", at pp. 2-4.) This decision was the result of carefully considered government policy, which still exists, preferring a private sector, multistakeholder model approach to DNS governance over an international bureaucracy. (SCH Decl. at ¶8, Ex. 6, Strickling's ICANN Opening Ceremony Speech, p. 1.)

The Department and ICANN agreed to jointly design, develop, and test the mechanisms, methods, and procedures that should be in place and the steps necessary to transfer the management responsibility for domain name system functions then performed by, or on behalf of, the U.S. government to a private sector not-for-profit entity. (SCH Decl. at ¶7, Ex. 5, p. 1.)  Today, pursuant to a series of agreements with the Department, ICANN is responsible for administering certain aspects of the DNS. (SCH Decl. at ¶6, Ex. 4, clause 3.)  This includes the authority necessary to "oversee policy for determining the circumstances under which new Generic Top Level Domain name registries [gTLDs] are added to the root system." (SCH Decl. at ¶7, Ex. 5, p.7.)  Thus, the introduction of new gTLDs has been a central focus of ICANN's operation and policy development work since ICANN's founding and the Internet community has declared ICANN's efforts in

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA. 90067
310-229-9900

1    this regard to be successful.[2]

2        ICANN is a complex organization that facilitates input from a wide variety

3    of Internet stakeholders from all over the world, including governments of many

4    countries.  ICANN is much more than just the corporation; it is a community of

5    participants, which includes the Board, the Staff, the Ombudsman, a Nominating

6    Committee for Directors, three Supporting Organizations, four Bylaws-established

7    Advisory Committees including the GAC, made up of representatives *from all*

8    *foreign governments*, a Technical Liaison Group, and a very large, *globally*

9    *distributed* group of community members that participate in ICANN's processes.

10   (SCH Decl. at ¶10, Ex. 8, ICANN Bylaws, Articles V-XI, XI-A).

11              b.  ICANN and the International Community Established the New

12                  gTLD Program, Including a Robust Dispute Resolution Policy.

13       ICANN's implementation of the new gTLD Program is the result of a

14   "cautious, deliberative seven-year process" refined with *worldwide* input from "10

15   independent expert working groups, 59 explanatory memoranda and independent

16   reports, thousands of comments in no less than 47 extended public comment

17   periods, and 1400 pages of comment summary and analysis."  (SCH Decl. at ¶11,

18   Ex. 9, "Testimony of Kurt Pritz to Senate Before the U.S. House of

19   Representatives Committee on Energy and Commerce Subcommittee on

20   Communications and Technology Hearing on ICANN's Top-Level Domain Name

21   Program," p. 1.)  The U.S. government, led by the Department's National

22

23   _____

     [2]  In 2004, the Organisation for Economic Co-Operation and Development (OECD) issued a

24   report entitled "Generic Top Level Domain Names: Market Development and Allocation Issues"
     that reviewed the historical results of ICANN's introduction of new TLDs and concluded that

25   "ICANN's reform of the market structure for the registration of generic Top Level Domain
     Names has been very successful.  The division between registry and registrar functions has

26   created a competitive market that has lowered prices and encouraged innovation."  (SCH Decl.,
     at ¶9, Ex. 7, "Working Paper on Telecommunication and Information Services Policies, Generic

27   Top Level Domain Names: Market Development and Allocation Issues", p. 4.)

28

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1    Telecommunication and Information Administration (NTIA) has, along with

2    representatives from governments around the world, participated actively in the

3    development of the new gTLD Program.  (SCH Decl. at ¶12, Ex. 10, "Testimony

4    of Associate Administrator Alexander on ICANN's Expansion of Top Level

5    Domains," at pp. 2-3.)

6        The new gTLD Program includes robust processes to assure that the global

7    internet community as a whole – with particular opportunities for U.S and foreign

8    governments, international organizations, and rights holders – has the opportunity

9    to raise objections that could lead to the rejection of applications that may cause

10   user confusion; infringement of legal rights, particularly intellectual property

11   rights; and misappropriation of community names or labels.  An independent

12   dispute resolution process has also been established providing a path for formal

13   objections during the evaluation of a new gTLD.  ICANN's brief explanation of

14   the objection policies is attached as SCH Decl. at ¶13, Ex. 11 hereto and the

15   complete Guidebook is attached hereto as SCH Decl. at ¶14, Ex. 12.  With

16   ICANN's Independent Dispute Resolution Service Providers (DRSP), a panel of

17   qualified experts will consider formal objections to a new gTLD.  (SCH Decl. at

18   ¶14, Ex. 12, §3.2, at p. 154.)  These objections include string confusion objection,

19   legal rights objection, limited public interest objection, and community objection.

20   (SCH Decl. at ¶14, Ex. 12, §3.2.1, at p. 154.)

21        c.  ICANN Has an Established Process to Resolve Plaintiff's

22            Concern.

23        ICANN itself will review the applied for gTLDs for any identical or

24   confusingly similar gTLDs.  (SCH Decl. at ¶14, Ex. 12, §4.1, p. 189.)  Such

25   identical or confusingly similar gTLDs will be placed in contention sets for

26   resolution and ICANN will not approve identical or confusingly similar gTLDs.

27   (*Id.*)  The contention must be resolved before an application is allowed.  (*Id.*)

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

17

Here, it is likely that Defendant TLDH, along with Plaintiff, former Defendant Big Room, and a fourth applicant, Little Birch LLC, will end up in a contention set unless legal rights objections are raised. The ICANN process does not provide that each competing applicant should run back to its home national court and get an injunction against its rivals, yet that is what Plaintiff has attempted to do, and prematurely at that. Plaintiff should be bringing its concerns about its trademark in the guise of such a legal rights objection, and failing that, through the ICANN contention-set process, not in this lawsuit.

      d.  <u>Interference with Foreign Trademark Rights Conflicts with Foreign Law.</u>

Interference with foreign trademark law is a serious concern of courts evaluating whether they have subject matter jurisdiction over foreign activities under the Lanham Act. *Star-Kist Foods, Inc.*, 769 F.2d at 1396 (holding the existence of a conflict with a foreign trademark registration weighs against extraterritorial application of the Lanham Act, stating "Application of the Lanham Act to wholly foreign Philippine commerce could create a conflict with Philippine patent and trademark law and with pending proceedings in that country"), citing *Wells Fargo*, 556 F.2d at 428-29; *see also Gallup, Inc.*, 688 F.Supp.2d at 923-924 (where parties each had trademark applications pending in foreign country, the court refused to extend jurisdiction to claim, stating "there is a *substantial* risk of conflict with foreign law")(emphasis in original); *see also Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643 (2d Cir. 1956)(in determining whether it had subject matter jurisdiction to enforce the Lanham Act against a Canadian corporation where plaintiff asserted trademark infringement in both Canada and the U.S., court held "the remedies provided by the Lanham Act, … should not be given an extraterritorial application against foreign citizens acting under presumably valid trade-marks in a foreign country.").

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    Here, TLDH has applied for a Danish and Chilean Trademark registration

2    for ECO for services quite similar to those covered in the Planet.Eco U.S.

3    Trademark Registration. (JFS Decl. at ¶¶ 19, 20) To enjoin TLDH from using ECO

4    or run a domain name registry in which Danish and Chilean citizens have just as

5    much right as U.S. citizens to purchase a domain name registration would conflict

6    with Danish or Chilean law.  It would also conflict with the right of Danish-based

7    and Chilean-based registrars to sell .eco domain name registrations.  Similarly,

8    former defendant Big Room has a European Community trademark registration.

9    (JFS Decl. at ¶21, Ex. E) For all we know, Little Birch, LLC also has a foreign

10   right.  It is therefore essential that adjudication of allegation of trademark rights be

11   conducted in a global context, not in a U.S. or any other national court.

12              e.  WIPO is the Appropriate Authority to Evaluate Competing

13                  International Intellectual Property.

14   ICANN has chosen the World Intellectual Property Organization (WIPO) to

15   administer and adjudicate legal-rights objections, which will include objections

16   based on claims of trademark infringement from any country.  (SCH Decl. at ¶14,

17   Ex. 12, Article 3(b), at P-3)  WIPO, based in Switzerland, is part of the United

18   Nations and is the principal international organization for intellectual property

19   rights.  In WIPO's own words, it is "a specialized agency of the United Nations. It

20   is dedicated to developing a balanced and accessible international intellectual

21   property (IP) system…."  (SCH Decl. at ¶15, Ex. 13, "Working at WIPO")

22   ICANN and its designated dispute resolution body, WIPO, as the accepted *world*

23   authority on trademarks, managing the international trademark and patent

24   registration systems, and a branch of the United Nations, are the right authorities to

25   handle these disputes since they often, as in this case, must take into account laws

26   of more than one country.

27   All governments have input into the ICANN process *and have ceded*

28

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    *exercise of national authority* in order to allow ICANN to develop and administer,

2    through the WIPO agency of the United Nations, a dispute resolution policy that is

3    fair and reasonable based on claims under any national right.  Thus it interferes

4    with commerce of every other member country of GAC to allow national courts to

5    start issuing injunctions that affect this global process.  ICANN and WIPO are

6    equipped to balance these interests beyond the capacity of any single national

7    Court acting only under the Lanham Act or its local equivalent.  (SCH Decl. at

8    ¶16, Ex. 14, "Legal Rights Objections under ICANN's New gTLD Program.")

9    WIPO's most recent report on how it plans to administer new gTLD legal rights

10   objections.

        f.    A U.S. Court's Intervention Would Cause Conflict with
              WIPO's Established Policy.

13        The WIPO procedure will be slightly different than that under the Lanham

14   Act.  For instance, the WIPO panel will determine whether the potential use of a

15   gTLD "(i) takes unfair advantage of the distinctive character or the reputation of

16   the objector's registered or unregistered trademark or service mark ('mark'') or

17   IGO name or acronym, or (ii) unjustifiably impairs the distinctive character or the

18   reputation of the objector's mark or IGO name or acronym, or (iii) otherwise

19   creates an impermissible likelihood of confusion between the applied-for gTLD

20   and the objector's mark or IGO name or acronym."  (SCH Decl. at ¶16, Ex. 14, p.

21   2), "What criteria will a panel use to determine the outcome of a Legal Rights

22   Objection?")  This further evidences that any enforcement by a U.S. court of the

23   Lanham Act over the new gTLD process could create a conflict with foreign law.

        g.    The U.S. Opposes External Intervention in the new gTLD
              Program.

26        The U.S. government has encouraged adoption of the ICANN program and

27   forcefully expressed its opposition to premature, external intervention in the new

28

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1  gTLD program.  As a member of the GAC, the U.S. government confirmed it will

2  "continue to actively monitor and participate in discussions related to the

3  expansion of new gTLDs within the ICANN process." (SCH Decl. at ¶12, Ex. 10

4  at p. 3)  In connection with this ongoing supervision, NTIA has stated that

5  "[s]afeguarding the rights of trademark owners and ensuring appropriate consumer

6  protections as this process moves forward remains a priority." (SCH Decl. at ¶12,

7  Ex. 10 at p. 3)  There are concerns that attacks on the ICANN model exist, which

8  the U.S. government wants to avoid.  (SCH Decl. at ¶17, Ex. 15, *Internet*

9  *Governance: Threats and Opportunities*, at pp. 1-2.)  Lawrence E. Strickling,

10  Assistant Secretary of Commerce for Communications and Information of the

11  NTIA, cautioned that "collateral attack[s]" on the multi-stakeholder-approved new

12  gTLD Program threatens the government's preferred multi-stakeholder model of

13  addressing Internet policy issues.  (SCH Decl. at ¶18, Ex. 16, "Remarks of

14  Assistant Secretary Strickiling at the Practising Law Institute's 29th Annual

15  Telecommunications Policy & Regulations Conference" at p. 4.)  This lawsuit, an

16  attempt to interfere in the new gTLD process for .eco before ICANN has even had

17  a chance to apply the procedures it has developed to adjudicate disputes, is such a

18  premature collateral attack of the type which is condemned by the U.S.

19  government.

20        h.  Intervention By a U.S. Court Would Encourage Other Nations

21             to Similarly Improperly Intervene.

22        Premature intervention by a U.S. court to short circuit the new gTLD

23  program before it gets off the ground – particularly absent any evidence that the

24  program's built-in safeguards will not work – will fuel governments that would

25  prefer to transfer authority for Internet governance to a treaty-based, international

26  organization, and undermine important U.S. public policy interests. To allow this

27  lawsuit to go forward against Defendants' ability to participate in the ICANN

28

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

process is to make a hypocrite out of the U.S. government and to invite the courts of Russia, Iran or China, or anywhere else, to do the same, taking local trademark rights and asserting them against U.S.TLD applicants, or even ICANN itself, instead of allowing ICANN to administer the interplay of application of various national rights to a global internet governance process.

### ii. The Nationality or Allegiance of the Parties and the Locations or Principal Places of Business of Corporations Do Not Support Subject Matter Jurisdiction.

Here, the parties are international and evidence the international nature of the internet and the domain name registry process.   TLDH is a BVI company with a headquarters in London, UK.  (FAC at ¶6)  If TLDH is awarded the contract by ICANN to run the global .eco TLD registry, it will be operating that registry at least partly outside the U.S.  *Indeed, it plans to house the registry in Ireland.* (AVC Decl. ¶34)  There is, therefore, no specific nexus to U.S. commerce.  As explained above, a domain name registration can be made by anyone, anywhere in the world through one of thousands of approved registrars, which ultimately is passed down the chain to the registry; the registry cannot always know where the end customer actually lives, and ICANN is not set up to require that applications be screened based on what country they come in from.  (See pp. 4-6 above.)

### iii. The Extent to Which Enforcement by Either State can be Expected to Achieve Compliance does not Support Subject Matter Jurisdiction.

Subject matter jurisdiction is not appropriate because a different "state" or entity is able to enforce compliance and a U.S. court cannot be expected to enforce compliance.

ICANN has been assigned the role of managing the new gTLD process; this is fully supported by the U.S. government; and ICANN has established a robust

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

1  rights enforcement program.  In *Playboy*, in refusing to find jurisdiction, the court

2  explained, "denial of the extraordinary relief [of preemptive injunction in foreign

3  countries] sought by plaintiff will not leave it vulnerable to foreign infringement; it

4  can proceed against Playmen in those states if and when defendants attempt to

5  publish there." *Playboy Enterprises, Inc.*, 511 F.Supp. at 495.  Here, as in

6  *Playboy*, Plaintiff has alternative relief through the ICANN process.  In fact,

7  interference in the process by a U.S. court would only conflict with, and threaten,

8  the internationally supported process and all that the U.S. government and the

9  international community have worked to create.  The largest threat is that it would

10  encourage other countries to similarly intervene and unravel the global consensus

11  on ICANN.

12       Further, the requested relief from this Court cannot be enforced.  Plaintiff

13  suggests in one part of the Complaint that Defendant be enjoined "in the United

14  States."  (FAC ¶ 47).  A U.S.-only injunction cannot be articulated, understood,

15  followed, complied with, or enforced, given the global nature of domain names and

16  the DNS system.  This was a significant concern in a factually similar internet case

17  involving a website operated from Pakistan.  In *Gallup*, the court recognized the

18  "borderless nature of Internet communications" and explained, "if plaintiff's

19  requested relief was granted, defendant would also be enjoined from using the

20  GALLUP or GALLUP PAKISTAN mark for any opinion poll or survey that could

21  be potentially accessed and published by American news outlets. Given the

22  borderless nature of Internet communications, it is difficult to imagine how

23  defendant could accomplish this without significant capital investments or

24  abandoning the GALLUP PAKISTAN name entirely." *Gallup, Inc.*, 688

25  F.Supp.2d at 924.

26      **iv.**    **The Relative Significance of Effects on the U.S. as Compared with**

27              **those Elsewhere does not Support Subject Matter Jurisdiction.**

28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

The relative significance of effects on the U.S. has been fully developed elsewhere herein.  The internet is a global phenomenon and any gTLD registration and any injunction on a gTLD registration and registry, will have global effects.  Moreover the U.S. has voluntarily ceded single-nation control over the process by turning the DNS management over to ICANN, as discussed extensively above.

**v.     The Extent to Which there is Explicit Purpose to Harm or Affect American Commerce does not Support Subject Matter Jurisdiction.**

It is ludicrous to suggest that TLDH has an explicit purpose to harm American commerce.  TLDH intends to make the .eco domain names available on a global scale and indeed would have no ability to truly limit them to any particular country, as discussed in detail above. To allow Plaintiff to enjoin this global conduct based on weak and totally unrelated trademark registration that does not cover domain registry services and is subject to cancellation on numerous grounds, and thus interfere with the rights of citizens of over 200 other countries from participating in the .eco registry, is preposterous.  TLDH certainly did not set out to harm Plaintiff – a tiny, speculative venture in a small corner of Connecticut – when it set out to apply to run the global .eco registry.  (AVC Decl. ¶30)  The mere intention to use a mark abroad is "fail[s] to demonstrate convincingly that those efforts were intended to hurt commerce in the United States."  *Playboy Enterprises, Inc.*, 511 F.Supp. at 495 (statement of planned publication in foreign countries insufficient to show intent to harm U.S. commerce).

Further operating an English website is insufficient.  In *Gallup*, the court discerningly stated, "plaintiff has not provided competent evidence of any 'purpose to harm or affect American commerce' on behalf of defendant [where] Plaintiff's only argument on this point is that because defendant['s] website is 'maintained in English and is accessible in the United States,' it should fall within the scope of the

Lanham Act's extraterritorial jurisdiction. This is tantamount to saying that any website maintained in English could be deemed infringing, because if it is in English, Americans might be interested in reading it or citing to it. This is insufficient, unpersuasive, and unfair in light of the considerations set forth in *Timberlane*." *Gallup, Inc.*, 688 F.Supp.2d at 925.

### vi.     The Foreseeability of Such Effect does not Support Subject Matter Jurisdiction.

The lack of any existing or foreseeable harm to U.S. commerce, as discussed at length herein, does not support jurisdiction.

### vii.    The Relative Importance to the Violations Charged of Conduct within the U.S. as Compared with Conduct Abroad does not Support Subject Matter Jurisdiction.

Any registration is not targeted at the U.S.  TLDH intends to make the .eco domain names available on a global scale and indeed would have no ability to truly limit them to any particular country, as discussed in detail above.

### CONCLUSION

This court is not the right place; Defendants are not the right target; and this is not the ripe time, to decide Plaintiff's request that Defendants be enjoined from "rendering domain registry services" related to the .eco top level domain.  Since these claims and requests for relief are so intermingled with any other claims of the Complaint, Defendants move to dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction pursuant to Article III of the Constitution and the extraterritorial application of the Lanham Act.

DATED:  October 16, 2012                    VENABLE LLP

By:  /s/Tamany Vinson Bentz

JANET SATTERTHWAITE
TAMANY VINSON BENTZ
MEAGHAN H. KENT
Attorneys for All Defendants

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

25